STATE OF NORTH CAROLINA v. THOMAS WALTER WRIGHT

No. 39

(Filed 3 November 1981)

1. **Burglary and Unlawful Breakings § 7— first degree burglary—intent to rape—instruction on non-felonious breaking and entering not required**

In this prosecution for first degree burglary and rape, testimony by the victim that, upon entering her bedroom, defendant immediately asked her, "Where is Johnny?" did not tend to show that defendant did not initially intend to commit the felony of rape when he illegally entered the victim's home and require the court to submit the lesser included offense of non-felonious breaking and entering since (1) when defendant's overall conduct throughout the continuous series of criminal events is considered, his question to the victim can be deemed as nothing more than a means to make certain that the victim was alone and (2) an individual having only innocent intentions would not break into another's home in the middle of the night and break through a locked bedroom door, while carrying an opened knife, just to find out where someone else might be.

2. **Rape § 6.1— first degree rape—failure to submit lesser included offenses**

The trial court in a first degree rape case did not err in failing to submit the lesser included offenses of attempted rape and assault with a deadly weapon where the victim's testimony raised a conflict only as to how defendant initially accomplished penetration and the evidence plainly established penetration.

**3. Criminal Law § 102.1— arguing facts of other cases to jury—objections sustained—instruction not necessary**

The district attorney's reference in his jury argument to the facts of a decided case for the purpose of explaining the law regarding the element of force in rape cases, if improper, was at most a minor transgression which was adequately cured by the trial court's immediate sustention of an objection thereto, and the trial court was not required to instruct the jury *sua sponte* to disregard such argument.

ON appeal as a matter of right from judgments of *Battle, Judge,* entered at the 5 January 1981 Criminal Session, GUILFORD Superior Court. Defendant received concurrent life sentences upon his convictions of first degree burglary and first degree rape.

Defendant was charged in indictments, proper in form, for the first degree rape of Belinda Womble in her home on 23 September 1980 and the commission of a first degree burglary connected therewith. Defendant entered pleas of not guilty to both offenses.

The State's evidence, in chief, consisted of the testimony of the victim, Belinda Womble. Several neighbors and investigating police officers substantiated and corroborated major portions of her testimony. Defendant offered no evidence in his behalf. The jury found defendant guilty as charged.

Since defendant makes no contention concerning the sufficiency of the evidence to sustain his convictions for first degree burglary and first degree rape, only those facts, which become relevant to defendant's specific assignments of error, shall be disclosed by inclusion in the opinion below.

*Attorney General Rufus L. Edmisten, by Associate Attorney Lisa Shepard, for the State.*

*Public Defender, Wallace C. Harrelson, and Assistant Public Defender, Hugh Davis North, III, for the defendant.*

COPELAND, Justice.

At the outset, we note that defendant has abandoned assignments of error 1, 2, 3, 4, 8 and 9 by failing to advance any argument to support them in his brief. Rule 28(a), North Carolina Rules of Appellate Procedure. By the assignments of error prop-

erly preserved for our review, defendant raises two basic questions: (1) whether the trial court should have instructed the jury about certain lesser included offenses, as requested, and (2) whether the trial court should have instructed the jury *sua sponte* to disregard the district attorney's reference to the facts of a decided case in his closing argument. A careful examination of this record, and the law applicable thereto, compels us to conclude that defendant's contentions, in both regards, are void of merit.

It is, of course, clear that a judge must declare and explain the law arising on all of the evidence, G.S. 15A-1232, and that this duty necessarily requires the judge to charge upon a lesser included offense, even absent a special request therefor, whenever there is *some* evidence to support it. *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970); *State v. Little*, 51 N.C. App. 64, 275 S.E. 2d 249 (1981). The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense. *State v. Gadsden*, 300 N.C. 345, 266 S.E. 2d 665 (1980); *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). Here, defendant argues that there was at least some evidence to support submission of the following lesser included offenses: non-felonious breaking and entering, upon the first degree burglary charge, and attempted rape and assault with a deadly weapon, upon the first degree rape charge. To the contrary, we find that *all* of the pertinent evidence is susceptible to but one reasonable interpretation, to wit, that defendant, if he was guilty of anything at all, was guilty of the higher degree crimes only.

[1] The victim testified that, upon entering her bedroom, defendant immediately asked her, "Where is Johnny?" Defendant relies upon this single fact as evidence tending to show that he did not possess the requisite felonious intent when he broke into and entered the dwelling. It is, of course, true that, to make out a case of burglary in the first degree, the State had to show that defendant broke into and entered an occupied dwelling or sleeping apartment in the nighttime with the intent to commit a felony therein. *State v. Sweezy*, 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. Bell*, 284 N.C. 416, 200 S.E. 2d 601 (1973). Defendant contends that his inquiry about "Johnny" was at least some evidence

that he did not initially intend to commit the felony of rape when he illegally entered the victim's home; rather, he was merely trying to find an acquaintance. If this evidence truly had any tendency to negate the existence of defendant's felonious intent, it would have unquestionably required the judge to submit the lesser crime of non-felonious breaking and entering, G.S. 14-54(b), in addition to the indicted charge of first degree burglary, G.S. 14-51. *See also State v. Cooper*, 288 N.C. 496, 219 S.E. 2d 45 (1975). We are not, however, persuaded that defendant's opening query about "Johnny's" whereabouts, standing alone, had any such proclivity whatsoever. The State's uncontradicted evidence showed the following.

Ms. Womble was aroused from her sleep in the early morning hours of 23 September 1980 by someone "knocking and bamming" on the front door of her apartment. Her husband was at work. She did not get up to see who was at the door. A few minutes later, she heard someone pulling at the screen to her bedroom window. She asked, "Who is it?" and saw an individual run away. That man was wearing light-colored pants and shirt. [When police officers later apprehended defendant in Ms. Womble's apartment, he was wearing khaki pants and a white striped shirt.] Ms. Womble got up, shut the window and barred it. After her return to bed, she rolled over and glanced through the other bedroom into the kitchen. She saw a man's hand by the refrigerator. She began screaming, jumped up and locked her bedroom door. The man pushed the door open and stood there swinging an opened hawkbill knife back and forth. He asked her, "Where is Johnny?" Thereupon, Ms. Womble immediately recognized the intruder as Thomas Walter Wright, the defendant, a man who had been to her apartment *once* before, some two months earlier, in the company of Johnny Richardson. She told defendant that Johnny did not live there. He then asked, "What are we going to do?" Ms. Womble asked him what he wanted, and he replied, "You know what I want." Defendant put the knife against her throat and ordered her to take off her clothes. After she undressed, he pushed her onto the bed and pulled his pants down. As he continued to hold the knife against her head, defendant got on top of her and had sexual intercourse with her.

In light of these facts, it would indeed stretch one's imagination to the breaking point to say that defendant's question about

"Johnny" was some indication, however slight, that his entry into the victim's home was not precipitated by a felonious intent. First, considering defendant's overall conduct throughout this continuous series of criminal events, his question, "Where is Johnny?" can be deemed as nothing more than a means to make · certain that the victim was alone and that his evil design would not be thwarted, or interrupted, by unexpected interference. Second, it is evident that an individual, having only innocent intentions, does not break into another's home in the middle of the night and break through a locked bedroom door, while carrying an opened knife, just to find out where someone else might be. In sum, the State's evidence, if believed, compelled a *single* rational conclusion: that defendant unlawfully entered an occupied dwelling in the nighttime with only one thing on his mind—to rape this woman. Thus, it was not error on this record for the trial court to reject defendant's requested instructions on non-felonious breaking and entering.

[2] Defendant also believes that the trial court should have instructed the jury about attempted first degree rape and assault with a deadly weapon. In this, too, he is mistaken. Instructions on the lesser included offenses of first degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration. *See State v. Hall*, 293 N.C. 559, 238 S.E. 2d 473 (1977); *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976). Such is not the case here, and defendant's argument in this regard simply misses the mark.

In pertinent part, the victim testified on direct examination, as follows, about what happened after defendant pushed her onto the bed:

> After he said, "I'm not going to keep on laying here," he kept on saying what we were going to do, and, "I'm not going to keep on laying here," and he said, "You know what I want you to do," so I reached down and I inserted his penis into my vagina.
>
>     . . . .
>
> After I inserted his penis into my vagina, he started to having sex with me. I couldn't think of no way to get him off. I didn't know how to get him up. Yes, he was moving, in a

round ways position. He was just moving this part of his body, right here, around his hips.

On cross-examination, the victim again stated:

> We were lying on the bed and he said, "I'm not going to keep lying here." At that time he almost asked me to put his penis in my vagina—he had a knife in the top of my head and was asking me what we going to do, and "I'm not going to keep lying here." At that time, it wasn't a thing to it—that I thought he wanted to put his penis in, I knew what he wanted me to do. So, I put his penis into my vagina because he told me he'd find me before the police found me if I turned him in.

This evidence plainly established the accomplishment of penetration and performance of the sex act. Nonetheless, defendant contends that the victim contradicted this testimony upon further cross-examination:

> Q. Didn't you make this statement to Detective Brady, he then tried to put his penis inside my vagina but couldn't get it in?
>
> A. Yes, I did, *but he did get inside me.*
>
> Q. Then you did tell Mr. Brady that he could not get his penis in your vagina, didn't you?
>
> A. Yes, I did.
>
> Q. So that is correct, isn't it, you told Mr. Brady that?
>
> A. Yes, but I said *he put it in himself.* He kept right on trying and he would not get up.
>
> I said that I did it, that I put it in, but he did not get up. By he did not get up, I mean he would not get up until he got himself up to the point where he wanted to be and that's when I asked him right after *he penetrated inside of me and he started having sex with me,* I did not move. I just laid there, and I asked him did he want something to eat. I made him mad when I asked him that. In other words, *we were having sex* and I said something about eating in the middle of it and that made him mad.

(Emphases added.)

It suffices to say that, at most, this testimony raised a question or conflict about *how* defendant's penis *initially* entered the victim's vagina. It had absolutely no tendency to negate the occurrence of penetration itself. Indeed, we find that the State presented overwhelming and uncontradicted evidence on this point. This being so, defendant has failed to show the existence of any evidence in this record to support submission of *attempted* rape and assault with a deadly weapon to the jury as possible alternative verdicts. Defendant was either guilty of first degree rape, or not guilty. The assignment of error is overruled.

[3] Defendant finally argues that certain remarks of the district attorney, in his closing argument to the jury, require a new trial. We disagree. Although counsel must respect certain well delineated boundaries thereto, wide latitude is permitted in jury argument. However, only the law and facts *in evidence*, as well as all reasonable inferences arising therefrom, may be properly argued to the jury. *State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980); *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). Indeed, fair play prohibits counsel from travelling outside the trial record and propounding extraneous facts to the jury. *See State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated*, 408 U.S. 939, 92 S.Ct. 2873, 33 L.Ed. 2d 761 (1972). In the instant case, defendant contends that the district attorney did just that by attempting to argue as follows:

> While we're talking about it, I want to say to you, first of all, that force can be the threatened use of force such as holding a knife to the victim's throat to procure her submission.

> The Supreme Court in 1967 did address that and said that evidence tending to show that four defendants had the sixteen year old victim alone at night in an automobile driven by them—

> MR. HARRELSON: I object.

> THE COURT: Objection sustained as to that.

Only this excerpt was printed in the record for our review.

> We preceive that the facts of *other* cases would ordinarily be inappropriate topics for jury argument. *State v. Spence*, 271 N.C.

23, 155 S.E. 2d 802 (1967), *vacated on other grounds,* 392 U.S. 649, 88 S.Ct. 2290, 20 L.Ed. 2d 1350 (1968); *State v. Board,* 37 N.C. App. 581, 246 S.E. 2d 581 (1978), *rev'd on other grounds,* 296 N.C. 652, 252 S.E. 2d 803 (1979); *State v. Royal,* 7 N.C. App. 559, 172 S.E. 2d 901 (1970). *See generally,* 75 Am. Jur. 2d *Trial* § 279 (1974). Nevertheless, we need not specifically decide here whether the district attorney should have been allowed to refer to the facts of another case for the apparent purpose of explaining the law regarding the element of force in rape cases. The district attorney was interrupted in mid-sentence by defendant's objection and did not complete the analogy. Since the trial judge promptly sustained defendant's objection, defendant's only cause for complaint now is that the trial court did not, on its own motion, give some sort of curative instruction on the matter. We hold that the judge was not obligated to do so in the absence of a request and that the district attorney's incomplete remark, about the 1967 case, if it was improper at all, was at most a "minor transgression" which was adequately cured by the judge's immediate sustention of defendant's objection thereto. *See State v. Monk,* 286 N.C. 509, 516, 212 S.E. 2d 125, 131 (1975). A new trial is warranted only where the judge has failed to correct a gross or extreme impropriety in jury argument. *State v. Johnson,* 298 N.C. 355, 259 S.E. 2d 752 (1979); *State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976). Consequently, this assignment of error must be overruled.

Our review of the record discloses no prejudicial error.

No error.