STATE v. NELSON

[114 N.C. App. 341 (1994)]

---

STATE OF NORTH CAROLINA v. GARY DEAN NELSON

No. 9318SC515

(Filed 19 April 1994)

1. **Rape and Allied Offenses § 200 (NCI4th) — first-degree rape — defendant's denial of penetration — instruction on attempted rape required**

   In a prosecution of defendant for second-degree rape, defendant's testimony was an unequivocal denial of penetration which entitled him to an instruction on the lesser included offense of attempted rape.

   **Am Jur 2d, Rape § 110.**

2. **Criminal Law § 496 (NCI4th) — jury request to view exhibits — failure to return jury to courtroom to hear request and response — error**

   The trial court committed prejudicial error in responding to the jury's written request to review evidence where the trial judge brought only the foreman and not the entire jury back into the courtroom to clarify which exhibits the jury wished to see and to instruct the foreman that the exhibits should not be altered in any way.

   **Am Jur 2d, Trial §§ 1573-1579.**

STATE v. NELSON

[114 N.C. App. 341 (1994)]

**Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal— post-Parker cases. 35 ALR4th 890.**

Judge LEWIS dissenting.

Appeal by defendant from judgment entered 2 October 1992 by Judge Narley Cashwell in Guilford County Superior Court. Heard in the Court of Appeals 11 January 1994.

On 20 April 1992, defendant was indicted on charges of second degree rape in violation of G.S. 14-27.3, and first degree kidnapping in violation of G.S. 14-39. At trial, the State's evidence tended to show the following: On 9 January 1992, Ms. Carla Shavers worked as a topless dancer at a nightclub in Greensboro. As part of her job, Ms. Shavers danced topless on stage every one to two hours during her shift and received tips from patrons who placed them in a garter belt on her thigh. If a patron requested, Ms. Shavers would perform a topless dance at the patron's table. When she was not dancing, Ms. Shavers mingled with the crowd.

On the evening of 9 January 1992, Ms. Shavers worked from approximately 7:30 p.m. until the club closed at 2:00 a.m. the next morning. Ms. Shavers testified that sometime in the middle of the evening, defendant tipped Ms. Shavers in her garter while she danced on stage. Ms. Shavers testified that defendant tipped her approximately $20-30 during the whole night. Sometime between 11:30 p.m. and 12:00 a.m., Ms. Shavers had a brief conversation with defendant. Ms. Shavers testified that defendant told her that he knew some of the other dancers at the club and that he used to be a bouncer for another local club. Defendant told Ms. Shavers that he was currently an escort for ladies who worked for a "Strip-O-Gram" service. Defendant gave Ms. Shavers a card and told her that he wanted her to work with him. Ms. Shavers did not express any interest in defendant's offer. Ms. Shavers also testified that she performed a table dance for defendant at around the same time that she had this conversation. Ms. Shavers testified that nothing else was said between her and defendant during that conversation and that she had no further conversations with defendant at the club.

When the club closed at 2:00 a.m., Ms. Shavers and another dancer left the building together. Once outside, they went their separate ways to their respective cars. Ms. Shavers went around

STATE v. NELSON

[114 N.C. App. 341 (1994)]

the building in the back to where her car was parked. Ms. Shavers testified that while she was walking to her car, defendant jumped out from behind a truck and told her that he needed a ride. Ms. Shavers told defendant that she did not give people rides and hurried to get to her car. Defendant followed. Ms. Shavers testified that when she unlocked the driver's door and got inside, defendant wedged himself in the car door opening and prevented her from closing the door. Defendant told Ms. Shavers that they were going to get in her car and leave together. When she refused, defendant yanked her from the car. Ms. Shavers screamed for help and struggled with defendant but defendant pinned her face down in the dirt behind the car and threatened to break her neck. Ms. Shavers testified that defendant then told her that they were going to get up from the ground, get into her car and leave together. Defendant pulled Ms. Shavers off the ground and took her to the car. When she got in the car, Ms. Shavers told defendant that she did not have her car keys and that she had no way to start the car. Defendant again pulled Ms. Shavers out of the car and told her to find the keys. Ms. Shavers saw the keys in the dirt where they had struggled and stepped on them to cover them. She then pretended that she could not find the keys. When Ms. Shavers told defendant that she could not find the keys, defendant picked her up, put her over his shoulder and carried her behind some U-Haul trucks.

Ms. Shavers testified that defendant then ripped open her shorts and underwear and started rubbing his penis on her vagina. Defendant did not have an erection at that time. Ms. Shavers further testified that defendant performed oral sex on her and then "put his penis inside [her] and began to have sex with [her]." While defendant was having sex with her, Ms. Shavers saw two people coming towards her car and told defendant that if the people looked in their direction, they would see defendant. Defendant then got up and pulled Ms. Shavers up by her arm. Ms. Shavers broke away from defendant and ran to the two people in the parking lot yelling that she had been raped.

Defendant presented evidence. Defendant testified that on 9 January 1992, he went to the nightclub with two friends. Defendant drank several glasses of double vodka and bourbon throughout the night. Defendant watched Ms. Shavers dance on stage and tipped her several times throughout her dance. Defendant testified that Ms. Shavers kissed him on the cheek one of the times that he

tipped her. Defendant testified that Ms. Shavers appeared to like him, so he offered to buy Ms. Shavers a drink when she was mingling in the crowd. Ms. Shavers accepted and defendant bought Ms. Shavers approximately six double vodkas while they talked.

Defendant testified that Ms. Shavers asked defendant what he would be doing later in the evening. Defendant told her that he worked for a power company and that he had to get up at 5:00 a.m. to go to work. Defendant testified that Ms. Shavers asked defendant if he would like to have breakfast with her. Defendant said that he was not driving and was riding with a friend. Ms. Shavers said that was okay and that she would have defendant home in time for him to get to work.

While defendant and Ms. Shavers were talking, Rick Loye, one of the friends with whom defendant came to the club that night, approached defendant and asked defendant if he was ready to leave. Defendant answered, "No." Defendant told Loye that Ms. Shavers was going to carry him home. Defendant and Loye both testified that Loye looked at Ms. Shavers and asked her if that was true. Ms. Shavers nodded her head and said, "Yes." Defendant testified that Ms. Shavers later told him that her last dance would be between 1:30 and 1:45 a.m. and that he should meet her at her car around back. Ms. Shavers told him that her car was a blue car sitting under a night light in the back of the club.

Defendant testified that when Ms. Shavers had almost finished her last dance, he left the club and went out back to Ms. Shavers' car. Defendant testified that he was very drunk by that time because he had been drinking heavily throughout the night. Defendant testified that he waited approximately 10 to 15 minutes for Ms. Shavers and then went around to the front of the building and used the pay phone. Defendant testified that he dialed "0" for the operator and told the operator that he was very intoxicated and asked if she would call him a taxi cab. A short while later, defendant saw Ms. Shavers come out of the club and head for her car. Defendant testified that he hollered to Ms. Shavers and that when she saw him, she motioned for him to join her. Defendant, however, felt hot and nauseous and went behind a U-Haul truck and sat down on a bumper so he would not be sick in front of her. Defendant testified that while he was sitting on the bumper with his hands on his knees, Ms. Shavers came up to him to see if he was okay and began to rub the back of defendant's neck

and shoulders. Defendant testified that he then felt her hand on the inside of his thigh rubbing his private parts. Defendant testified that Ms. Shavers unzipped his pants and performed oral sex on him. After defendant got a slight erection, Ms. Shavers knelt in front of defendant and pulled defendant to her but defendant had lost his erection by this time. Defendant testified that Ms. Shavers began rubbing his penis against her vagina and tried to insert it into her vagina. However, defendant testified that "she never got it inside her vagina."

Ms. Shavers then told defendant that someone was coming out the back door and pushed him off of her. Defendant testified that Ms. Shavers went to the two people and that he heard her tell one of them that he had raped her. Defendant got scared and left the area and was subsequently apprehended by the police.

The jury found defendant guilty on both charges. Defendant was sentenced to a term of 25 years imprisonment for second degree rape and a concurrent term of 25 years imprisonment for first degree kidnapping. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Melissa L. Trippe, for the State.*

*Geoffrey C. Mangum for defendant-appellant.*

EAGLES, Judge.

Defendant contends that the trial court erred in 1) refusing to submit to the jury the charge of attempted second degree rape as a lesser included offense of second degree rape, 2) responding to a jury request to review evidence without all of the jurors present in the courtroom, and 3) entering judgment on first degree kidnapping. After careful review of the record and briefs, we remand to the trial court for a new trial on both charges.

I.

[1] Defendant first contends that the trial court erred in refusing to instruct the jury on the lesser included offense of attempted rape. We agree.

The trial court must instruct the jury upon a lesser included offense when there is evidence to support it. *State v. Wright,* 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981). However, "when the State's evidence is clear and positive with respect to each

element of the offense charged, and there is no evidence showing the commission of a lesser included offense," the trial court may refuse to instruct the jury on the lesser included offense. *State v. Hardy*, 299 N.C. 445, 456, 263 S.E.2d 711, 718-19 (1980). Instructions on the lesser included offenses of rape are required only when there is some conflict or doubt concerning the crucial element of penetration. *See State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981).

Here, the victim testified that defendant "put his penis inside me, and he began to have sex with me." Defendant, however, testified as follows:

Q. Did you ever insert your penis, or did your penis ever get into any part of her body, her vagina or anything else?

A. No, sir. I—she had my penis in her hand, and no, she never—she never got it inside her vagina.

Q. Did you ever have intercourse with her?

A. No, sir.

Defendant contends that his testimony was an unequivocal denial of penetration entitling him to an instruction on attempted rape under *State v. Williams*, 314 N.C. 337, 333 S.E.2d 708 (1985). We agree.

In *Williams, supra*, the prosecuting witness testified unequivocally that the defendant inserted "his penis . . . into my vagina." *Id.* at 352, 333 S.E.2d at 718. The defendant's written statement, however, stated that:

I [defendant] embarrassingly removed my pants to my knees, and without touching her elsewhere, *struggled to penetrate without an erection.* At this the girl began a muffled laugh, so I got up and dressed as Shannone was going through her purse.

*Id.* at 351, 333 S.E.2d at 718 (emphasis in original). The defendant in *Williams* contended that this portion of his written statement was essentially a denial of penetration. The Supreme Court held that the defendant's statement was not an unequivocal denial of penetration and that "[h]ad the defendant unequivocally denied the essential element of penetration, it would have been incumbent

STATE v. NELSON

[114 N.C. App. 341 (1994)]

upon the trial judge to have placed that issue before the jury." *Id.* at 353, 333 S.E.2d at 719.

Since defendant here unequivocally denied the essential element of penetration, we conclude that defendant was entitled to an instruction on attempted rape. Accordingly, we hold that defendant must be given a new trial on the charge of second degree rape.

## II.

[2] Defendant further contends that the trial court erred in responding to the jury's written request to review evidence when the trial judge orally addressed the jury foreman without all of the jurors being present in the courtroom. We agree and conclude that defendant must also be awarded a new trial on both charges.

During deliberations, the jury sent a note to the court through the bailiff requesting to review certain pieces of evidence introduced at trial. The note read as follows: "One, photos. Two, underwear. Three, medical reports. Four, rose." In order to determine which exhibits to send back to the jury, the trial court brought only the jury foreman back into the courtroom to clarify which exhibits the jury was referring to in the note. The other jurors remained in the jury room. The relevant parts of the conversation are as follows:

THE COURT:—I want to just clarify one thing. Mr. Farley, [foreman] I have a note given me by the bailiff which lists four items that the jury wishes to see. One is photographs.

JUROR NO. 9:—[Foreman] Yes, sir.

THE COURT:—Two says underwear, three says medical reports, and four says rose.

JUROR NO. 9:—Yes.

THE COURT:—Do you—does the jury wish to see all of the photographs?

JUROR NO. 9:—I think they more meant the photographs that were laying out right in front of us just before we went in.

THE COURT:—Okay.

Mr. Cahoon and Mr. Panosh, I'm going to send back all of the photographs.

I don't know which ones were laying out there, but I'll let you have all of the photographs.

When you say "underwear," are you referring to a particular item?

JUROR NO. 9: — Ms. Shavers' underwear

. . . .

THE COURT: You will be allowed to get that.

Medical reports, you're referring to all of the medical reports, that is, both the defendant's exhibits — and I don't know if the State had any marked or not.

MR. PANOSH: Yes, sir.

THE COURT: — All of the reports referring to medical reports, is that correct?

JUROR NO. 9: — Yes. I polled the room asking individuals —

THE COURT: — Don't tell me that. Just tell me yes or no what you want. Just all the medical reports, too?

JUROR NO. 9: — Yes, sir.

. . . .

THE COURT: — Mr. Farley, I would ask you, of course, when these items are in the jury's possession back in the jury room, do not alter or change them in anyway. Don't make any marks on them. Don't do anything in that regard. You may examine them, but don't alter or change them in anyway, please.

Defendant contends that the trial court erred in not bringing all the jurors back into the courtroom to hear the jury foreman's request and the trial court's response to it. We agree.

G.S. 15A-1233(a) provides that "If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom." In *State v. Ashe,* 314 N.C. 28, 331 S.E.2d 652 (1985), the jury foreman returned alone to the courtroom and asked if the jury could review certain portions of the testimony. The trial court responded that there was no transcript available and that the jurors would have to rely upon their own recollections during deliberations. Our Supreme Court held that the trial court committed prejudicial error in violation of G.S. 15A-1233 in not bringing all the jurors into the courtroom to hear both the jury foreman's request and the trial court's response

STATE v. NELSON

[114 N.C. App. 341 (1994)]

to the request. The Court stated that the danger in allowing an individual juror or jury foreman to communicate privately with the trial court was that:

> [T]he person, even the jury foreman, having alone made the request of the court and heard the court's response firsthand, may through misunderstanding, inadvertent editorialization, or an intentional misrepresentation, inaccurately relay the jury's request or the court's response, or both, to the defendant's detriment. Then each juror, rather than determining for himself or herself the import of the request and the court's response, must instead rely solely upon their spokesperson's secondhand rendition, however inaccurate it may be.

*Id.* at 36, 331 S.E.2d at 657.

The State, however, contends that *Ashe* is distinguishable from the case at hand because the trial court in *Ashe* essentially gave the jury foreman additional jury instructions in telling him that the jurors would have to recollect the evidence as best they could. The State argues that here, the trial court only asked the jury foreman to clarify which exhibits the jury wanted. However, we think that the trial court's actions here presented one of the dangers explicitly referred to in *Ashe*. The jury foreman here may have inaccurately relayed the jury request or the judge's response. In addition, the trial court's instruction to the jury foreman not to mark on the exhibits is an instruction required to be given under G.S. 15A-1233(b) when the jury is allowed to take exhibits back into the jury room. Accordingly, we hold that the trial court erred in not bringing all the jurors back into the courtroom to hear the jury foreman's explanation of the jury's note and the trial court's response.

The State also contends that if the trial court committed error it was harmless error under G.S. 15A-1443. We disagree. In concluding that the trial court in *Ashe* committed prejudicial error in not requiring that all jurors be present to hear the jury foreman's request and the trial court's response to it, the *Ashe* Court stated:

> First, as we have already said, all jurors should be present to hear the request itself, for it is only in light of the request, the manner and precision with which it is put, that the court's response can be accurately assessed and properly understood. Second, the trial court's response was not a simple "no" as

STATE v. NELSON

[114 N.C. App. 341 (1994)]

the state contends. Rather, the court explained that it could not grant the foreman's request because no transcript existed, and that the jurors would have to rely upon their recollection of the evidence as best they could. Although the foreman might have relayed this exact message, he might as easily have conveyed some altered message or phrased the judge's response in his own words in such a way as to alter its connotation and its import. The manner in which he reported his request and the response might have led the other jurors to believe the trial court thought the evidence which the jury wanted reviewed unimportant or not worthy of further consideration.

*State v. Ashe*, 314 N.C. 28, 38, 331 S.E.2d 652, 658-59 (1985).

Here, the trial court did not simply grant the jury's request to review the exhibits, but called only the jury foreman out to explain which exhibits the jury was referring to in the note. Not only did the jury not hear the jury foreman's request or explanation, they did not hear the trial court's response or its instruction not to mark on or tamper with the exhibits. We conclude that the trial court's error here was prejudicial and that defendant is entitled to a new trial on both charges on this ground.

III.

We need not address defendant's third contention as it is not likely to arise in the new trial. For the reasons stated, we remand to the trial court for a new trial on the charges of second degree rape and first degree kidnapping.

New trial.

Judge JOHNSON concurs.

Judge LEWIS concurs in part and dissents in part.

Judge LEWIS dissenting.

I respectfully dissent as to the majority's conclusion that the defendant is entitled to a new trial on first degree kidnapping because the trial judge spoke only to the foreman of the jury in the courtroom without bringing the entire jury in. I believe *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985), is distinguishable from this case. Absolutely nothing in substantive law or recitation

STATE v. NELSON

[114 N.C. App. 341 (1994)]

of facts was exchanged. The judge simply ascertained what the jurors wanted and then allowed them to see all of the evidence requested. The dangers outlined in *Ashe* should be avoided, but a fair trial and verdict should not be overturned because of what might have happened. I interpret N.C.G.S. § 15A-1233(a) (1988) to mean that if the judge grants the jury's request to review certain testimony, then the entire jury should be brought back into the courtroom to have the testimony read to them from the transcript. They should not have to all come in the courtroom to see evidence. Frequently, the practice now is for notes requesting evidence to be sent out of the jury room by the bailiff and pieces of evidence to be sent back in without any juror coming into the—courtroom. If testimony is to be read, all the jurors must be brought back into the courtroom and the reading must take place on the record. As to the sending in of pieces of evidence, according to the majority's interpretation, if the jury requested to view a piece of evidence, for example, a shoe, the entire jury would have to be brought back in to see it. This is neither required nor should be, as evidence can be sent to the jury room without disrupting the jurors by having them all come back out. It is no longer necessary to have consent of the parties for the judge to send evidence to the jury room.

Assuming for the sake of argument that it was error for the judge to speak to the foreman, it was certainly, under the facts of this situation, harmless. This conviction for kidnapping should stand.

I concur with the majority that the trial court should have instructed on attempted second degree rape as there was testimony by the defendant that penetration had never occurred but that it had been attempted. We are bound by *State v. Wright*, 304 N.C. 349, 283 S.E.2d 502 (1981).