STATE OF NORTH CAROLINA v. ANGELIA SCATES COMBS

No. COA06-613

(Filed 3 April 2007)

**1. Robbery— sufficiency of evidence—constructive presence—series of crimes**

The trial court did not err by denying a motion to dismiss an armed robbery charge where defendant acted in concert with another to commit three crimes, the last being an armed robbery, for the common plan or purpose of obtaining money to go to Florida. Defendant was actually present and participated in the first two crimes (use of a stolen credit card and common law robbery) and was constructively present at the armed robbery by waiting in a car in the parking lot and driving away with her accomplice.

**2. Jury— jury request to view evidence—statement read into evidence—redacted version created and provided—not prejudicial**

There was error in an armed robbery prosecution which was not prejudicial where the jury requested copies of all of defendant's statements, the prosecutor pointed out that one of those statements was not in document form because a detective had read from a report which was never admitted into evidence, and the court sent a redacted version of the report to the jury room. Nothing in N.C.G.S. § 15A-1233 authorizes a court to proceed in this way; however, it is undisputed that the testimony would have been identical to the written document provided to the jury and the document contained exculpatory information.

**3. Robbery— use of knife in robbery—no evidence of lesser offense**

The trial court did not err in an armed robbery trial by not charging on common law robbery where the victim testified that

defendant's accomplice pressed a pocketknife with a three to four inch blade to his chest and threatened to cut him if he didn't open the register.

### 4. Evidence— prior crimes or bad acts—common plan or scheme—limiting instruction

Evidence of the attempted use of a stolen credit card and a common law robbery was properly admitted in a prosecution for armed robbery where all three acts occurred within 3 blocks and were committed within approximately one hour, and the trial court gave an instruction limiting the evidence to common scheme or plan.

### 5. Criminal Law— prosecutor's opening argument—other crimes—forecast of common plan or scheme—latitude

The trial court did not abuse its discretion when it did not sustain defendant's objection to the prosecution's opening argument about another offense in an armed robbery prosecution. The prosecutor is allowed latitude regarding the scope of his opening statement and forecasted admissible and relevant evidence tending to show a common scheme or plan.

Judge ELMORE dissenting.

Appeal by defendant from judgment entered 7 December 2005 by Judge John O. Craig, III, in Guilford County Superior Court. Heard in the Court of Appeals 7 February 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Amanda P. Little, for the State.*

*James N. Freeman, Jr., for defendant-appellant.*

TYSON, Judge.

Angelia Scates Combs ("defendant") appeals from judgment entered after a jury found her to be guilty of robbery with a dangerous weapon. We find no prejudicial error.

### I. Background

On 13 October 2004, defendant and Hank Lanier ("Lanier") drove to High Point, North Carolina to obtain money in order to travel to Florida. Defendant and Lanier entered a K-Mart Store at approximately 9:30 a.m. and attempted to purchase a drink with a

stolen credit card. The card was declined and defendant and Lanier exited K-Mart.

At approximately 9:56 a.m., defendant and Lanier entered the Perfect Nail Salon (the "Salon") located adjacent to the K-Mart Store. Defendant entered under the pretense of applying for a job. Defendant and a Salon employee struggled, while Lanier grabbed the cash register. Both defendant and Lanier ran out of the Salon. Defendant and Lanier drove out of the parking lot in a gray Ford F-150 pickup truck. Lanier broke open the cash register with a screwdriver, discovered it to be empty, and threw the cash register out of the car.

Defendant and Lanier drove to Zingo Mart located three blocks from the Salon and parked behind the store. At approximately 10:04 a.m., Lanier entered the Zingo Mart while defendant remained in the truck. Richard Bailey ("Bailey") was the only Zingo Mart clerk working that day and testified he saw Lanier enter the Zingo Mart. Lanier jumped over the counter and pressed a pocket knife with a three to four inch blade against Bailey's chest. Lanier stated if Bailey did not open the cash register, Lanier would cut him. Bailey opened the cash register. Lanier removed approximately $350.00 and exited the Zingo Mart. Bailey testified he saw a "bluish" pick-up truck exit the parking lot moments later.

Bailey contacted law enforcement officers and gave a description of Lanier and defendant to Detective Mark McNeill ("Detective McNeill"). Detective McNeill spoke with Brian Peterson, the loss prevention manager at the K-Mart Store. Peterson recalled defendant and Lanier's attempted drink purchase and found a photograph of defendant and Lanier on the K-Mart's security camera. Bailey identified Lanier from that photograph.

At approximately 2:40 p.m., Detective Stephanie Murphy ("Detective Murphy") stopped defendant and Lanier's vehicle after she received a report of the crimes that morning. Detective Murphy arrested both defendant and Lanier. Defendant waived her Miranda rights and gave a voluntary statement and confessed to the Salon robbery. On 14 October 2004, defendant gave a second voluntary confession to Detective McNeill and again admitted participating in the Salon robbery.

On 3 January 2005, a grand jury indicted defendant on robbery with a dangerous weapon for the Zingo Mart robbery and common law robbery of the Salon. On 5 December 2005, defendant pled guilty

to the common law robbery. The State proceeded to trial on defendant's robbery with a dangerous weapon charge. The jury returned a verdict of guilty of robbery with a dangerous weapon. The trial court sentenced defendant to an active minimum sentence of sixty-one months and eighty-three months maximum. Defendant appeals.

## II.  Issues

Defendant argues the trial court erred when it: (1) denied her motion to dismiss; (2) provided a document not admitted into evidence to the jury during jury deliberations; (3) failed to charge the jury on common law robbery as a lesser included offense to robbery with a dangerous weapon; (4) allowed Exhibits 3 and 9 into evidence; and (5) failed to sustain her objection to the State's opening statement.

## III.  Motion to Dismiss

[1] Defendant argues the trial court should have dismissed the charge of robbery with a dangerous weapon. We disagree.

### A.  Standard of Review

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005) (internal quotations omitted).

This Court stated in *State v. Hamilton*, "in 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury, both in reliance on the common sense and fairness of the twelve and to avoid unnecessary appeals." 77 N.C. App. 506, 512, 335 S.E.2d 506, 510 (1985) (citations omitted), *disc. rev. denied*, 315 N.C. 593, 341 S.E.2d 33 (1986).

## B. Analysis

N.C. Gen. Stat. § 14-87(a) (2005) states:

(a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

Robbery with a dangerous weapon is: (1) the unlawful taking or attempt to take personal property from the person or in the presence of another (2) by the use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened (4) where the taker knows he is not entitled to take the property and (5) intends to permanently deprive the owner of the property. *State v. Richardson*, 342 N.C. 772, 784, 467 S.E.2d 685, 692 (1996), *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996).

The principle of concerted action need not be overlaid with technicalities. It is based on the common meaning of the phrase "concerted action" or "acting in concert." To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose.

*State v. Joyner*, 297 N.C. 349, 356, 255 S.E.2d 390, 395 (1979) (The trial court properly denied the defendant's motion to dismiss charges on acting in concert theory.). Our Supreme Court reasoned:

Where the state seeks to convict a defendant using the principle of concerted action, that this defendant did some act forming a part of the crime charged would be strong evidence that he was acting together with another who did other acts leading toward the crimes' commission. That which is essentially evidence of the existence of concerted action should not, however, be elevated to the status of an essential element of the principle. Evidence of the existence of concerted action may come from other facts. *It is not, therefore, necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is suffi-*

*cient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.*

*Id.* at 356-57 (emphasis in original and supplied); *see State v. Johnson*, 164 N.C. App. 1, 13, 595 S.E.2d 176, 183 (2004) (Evidence sufficient to show the defendant acted in concert to commit robbery with a dangerous weapon when he and two co-defendants planned to rob someone by having the unarmed defendant frighten the victims, but the co-defendant instead menaced the victims with a shotgun, and the defendant took the victims' money.); *see also State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) (Under the theory of acting in concert, upon which the jury was instructed, if two or more persons join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose.).

Constructive presence is not determined by the defendant's actual distance from the crime; the accused simply must be near enough to render assistance if need be and to encourage the actual perpetration of the crime. *State v. Wiggins*, 16 N.C. App. 527, 531, 192 S.E.2d 680, 682 (1972). Thus, the driver of a "get-away" car may be constructively present at the scene of a crime although stationed a convenient distance away. *Id.* at 530, 192 S.E.2d at 682-83; *see State v. Lyles*, 19 N.C. App. 632, 636, 199 S.E.2d 699, 702 (The defendant driver of "get-away" car was "present" at scene of crime even though he was waiting in trailer park located 100 feet behind store being robbed.), *cert. denied*, 284 N.C. 426, 200 S.E.2d 662 (1973); *but cf. State v. Buie*, 26 N.C. App. 151, 154, 215 S.E.2d 401, 404 (1975) (The defendant not constructively present where he arranged for others to steal tools from a sawmill, and, in response to actual participants' telephone call to the defendant's nearby home, picked up and drove participants away from scene of crime.).

Defendant admitted to Detective McNeill that she and Lanier traveled to High Point on 13 October 2004 "to get getaway money to go to Florida." Evidence shows defendant and Lanier had a common plan or purpose to obtain money to go to Florida. Defendant and Lanier initially stopped at a K-Mart store and attempted to use a stolen credit card. Defendant and Lanier left K-Mart and entered the Perfect Nail Salon, located beside K-Mart. Defendant admitted that she and Lanier stole a cash register from the Salon, which they later discovered to be

STATE v. COMBS

[182 N.C. App. 365 (2007)]

empty of cash. Defendant and Lanier drove out of the shopping center and stopped minutes later at the Zingo Mart. Lanier stole $350.00 from the Zingo Mart at knife point.

Defendant acted in concert with Lanier to commit crimes at: (1) K-Mart; (2) Perfect Nail Salon; and (3) Zingo Mart. *See Joyner*, 297 N.C. at 356, 255 S.E.2d 390 at 395 (To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose.). Sufficient evidence supports defendant was constructively present to the Zingo Mart robbery because she was actually present and participated in the crimes at K-Mart and the Perfect Nail Salon. She remained in the vehicle in the Zingo Mart parking lot during the third crime. She drove away with Lanier after Lanier robbed the Zingo Mart. Viewing the evidence in the light most favorable to the State, the trial court did not err when it denied defendant's motion to dismiss. This assignment of error is overruled.

## IV. Defendant's Statement

**[2]** Defendant argues the trial court committed prejudicial error when it provided a document to the jury during jury deliberations that had not been admitted into evidence. We disagree.

Under N.C. Gen. Stat. § 15A-1233:

(a) If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

(b) Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take additional material or first review other evidence relating to the same issue so as not to give undue prominence to the exhibits or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit.

The decision whether to grant or refuse a request by the jury for a restatement or review of the evidence after jury deliberations have begun lies within the discretion of the trial court. *State v. Johnson*, 346 N.C. 119, 123, 484 S.E.2d 372, 375 (1997).

During jury deliberations, the jury sent a note which stated, "Jury request: all statements by Ms. Combs, and any pictures taken." The following colloquy ensued:

The Court: They are wanting the statements by Ms. Combs and all the photographs. Any objection to giving them those?

[Prosecutor]: One statement of hers is not in document form, the one that Detective McNeill basically read into the record.

The Court: Okay. So that was not into evidence.

[Prosecutor]: No, sir. The statement itself was, but not as a document.

The Court: Right.

[Defense counsel]: What has been introduced as an exhibit, obviously no objection to that.

The Court: What are we going to do about the one that's not in document form but is in evidence? I know they're going to want it.

[Prosecutor]: I can type it and print it out. It's in quotations in his report, but we don't want to send the whole report back.

[Defense counsel]: Right. Does the question go to the exhibits, or does it just say statements?

The Court: It says: "Jury request: all statements by Ms. Combs, and any pictures taken."

[Defense counsel]: I guess the only concern—and I'm just thinking out loud, bear with me—is if there were some, I can't remember, and I'll defer to the Court and [the prosecutor] on this, whether there may have been some other statements that she gave to Davidson County officials, at least referred to. And then my concern is we don't have any way of getting that back to them as well. So I guess it's just a general judgment as to typing up something that has not been introduced as an exhibit, since—but I don't wish to be heard.

**STATE v. COMBS**

[182 N.C. App. 365 (2007)]

The Court: Well, to the extent that the specific words may, uh, were put into evidence by the testimony of Detective McNeill, the only way we could get them, uh, if they want that statement, the only way to get it otherwise would be to have, uh, put him back on the witness stand and have him re-read it. I'd rather not do that, if we can figure out some way to get it in some sort of written form to them.

[Prosecutor]: I think what I'll do, instead of typing it over again, is to chop up ____

The Court: Redact it, yes.

[Prosecutor]: If you'll give me a minute, I can get that done.

The Court: Okay. I'm going to send State's Exhibit 9 to the jury, along with the photographs, Madam Clerk, if you will get those together for me. And in my discretion, I am going to give them a redacted statement that was read into evidence by Detective McNeill, rather than require him to get back on the witness stand and re-read his testimony. We have taken a redacted version and made a photocopy of it and it's my understanding that [defense counsel] wishes to make an objection for the record.

[Defense counsel]: That is correct, if your Honor please. We would object.

Nothing in N.C. Gen. Stat. § 15A-1233 authorizes the trial court to proceed as it did in this case. When the jury requested copies of all of defendant's statements, the prosecutor pointed out to the trial court that one of those statements was not in document form. Instead, Detective McNeill had testified to that statement, reading from his report. His report was never admitted into evidence. The trial court, nevertheless, sent a redacted version of that report back to the jury room.

The statute grants the trial court discretion to make available to the jury only "testimony or other evidence" and "exhibits and writings which have been received in evidence." N.C. Gen. Stat. § 15A-1233(a) and (b). Because the police report was not admitted into evidence, the trial court necessarily had no discretion to allow it to be reviewed by the jury. The State acknowledges this fact in its brief, "Defendant correctly asserts that N.C.G.S. § 15A-1233 does not give authority to permit the jury to take writings which have not been received in evidence to the jury room under any circumstances."

We conclude the trial court's error was not prejudicial to defendant. *See* N.C. Gen. Stat. § 15A-1443(a) (2005) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.").

The trial court could have instructed the court reporter to that portion of Detective McNeill's testimony in which he reported defendant's statement to the jury under N.C. Gen. Stat. § 15A-1233(a).

Since it is undisputed that the testimony would have been identical to the written document provided to the jury and since that document contained exculpatory information, we conclude there is no reasonable possibility that the jury would have reached a different verdict if Detective McNeill's redacted report had not been sent back to the jury room.

The trial court's error did not rise to the level of prejudice required by N.C. Gen. Stat. § 15A-1443(a) to award defendant a new trial.

## V. Lesser-Included Offense

**[3]** Defendant argues the trial court erred when it failed to charge the jury as to common law robbery as a lesser included offense of robbery with a dangerous weapon. We disagree.

As stated above, "[u]nder N.C.G.S. § 14-87(a), robbery with a dangerous weapon is: '(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.' " *State v. Olson,* 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (quoting *State v. Beaty,* 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982), *overruled on other grounds by State v. White,* 322 N.C. 506, 369 S.E.2d 813 (1988)); *see* N.C. Gen. Stat. § 14-87 (1993). " 'Force or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense.' " *Beaty,* 306 N.C. at 496, 293 S.E.2d at 764 (quoting *State v. Mull,* 224 N.C. 574, 576, 31 S.E.2d 764, 765 (1944)).

"[W]here the uncontroverted evidence is positive and unequivocal as to each and every element of armed robbery, and there is no evidence supporting defendant's guilt of a lesser included offense, the

trial court does not err by failing to instruct the jury on the lesser included offense of common law robbery." *State v. Peacock*, 313 N.C. 554, 562, 330 S.E.2d 190, 195 (1985). "The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981). "The critical difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened." *Peacock*, 313 N.C. at 562, 330 S.E.2d at 195; *see State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979) (No instruction on common law robbery required in the absence of affirmative evidence of the nonexistence of an element of the offense charged.).

Bailey testified Lanier "jumped the counter and had the knife in [his] chest[,]" and ordered Bailey "to open the register or he'd cut me." Bailey testified Lanier held a pocketknife with an approximate three to four inch blade and pressed the knife against Bailey's chest. Bailey opened the register and Lanier removed about $350.00. Uncontradicted evidence tends to show Lanier robbed the Zingo Mart with a pocketknife. Under the theory of acting in concert, the trial court did not err when it denied defense counsel's request for an instruction on the lesser included offense of common law robbery. This assignment of error is overruled.

### VI. Exhibits 3 and 9

**[4]** Defendant argues the trial court erred when it allowed Exhibits 3 and 9 into evidence. We disagree.

### A. Standard of Review

The standard of review for assessing evidentiary rulings is abuse of discretion. *State v. Meekins*, 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985).

### B. Rule 404(b)

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005) states:

(b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a per-

son in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. Admissible evidence may include evidence of an offense committed by a juvenile if it would have been a Class A, B1, B2, C, D, or E felony if committed by an adult.

The admissibility of 404(b) evidence is subject to the weighing of probative value versus unfair prejudice mandated by Rule 403. *State v. Agee*, 326 N.C. 542, 549, 391 S.E.2d 171, 175 (1990) (citing *United States v. Montes-Cardenas*, 746 F.2d 771, 780 (11th Cir. 1984)); N.C. Gen. Stat. § 8C-1, Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of unfair delay, waste of time, or needless presentation of cumulative evidence."). Rule 404(b) is a rule of inclusion, not exclusion. *Agee*, 326 N.C. at 550, 391 S.E.2d at 175.

Rule 404(b) evidence is relevant and admissible so long as the incidents are sufficiently similar and not too remote in time. *State v. Blackwell*, 133 N.C. App. 31, 35, 514 S.E.2d 116, 119 (citing *State v. Bagley*, 321 N.C. 201, 207, 362 S.E.2d 244, 247-48 (1987)), *disc. rev. denied*, 350 N.C. 595, 537 S.E.2d 483 (1999); *see also State v. Smith*, 152 N.C. App. 514, 527, 568 S.E.2d 289, 297 ("The use of evidence permitted under Rule 404(b) is guided by two constraints: similarity and temporal proximity.") (citation omitted), *disc. rev. denied*, 356 N.C. 623, 575 S.E.2d 757 (2002).

Remoteness in time is most important where evidence of another crime is used to show that both crimes arose out of a common scheme or plan[; r]emoteness in time is less important when the other crime is admitted because its modus operandi is so strikingly similar to the modus operandi of the crime being tried as to permit a reasonable inference that the same person committed both crimes.

*State v. Schultz*, 88 N.C. App. 197, 203, 362 S.E.2d 853, 857 (1987), *aff'd*, 322 N.C. 467, 368 S.E.2d 386 (1988); *see State v. Alvarez*, 168 N.C. App. 487, 497, 608 S.E.2d 371, 377 (2005) (Evidence of prior robberies was admissible to show a common scheme or purpose because each of the prior robberies was sufficiently similar to the subject robbery and occurred within weeks of the subject robbery, and the State proffered testimony that the robberies were all part

of a common scheme or plan towards a drug transaction with a Connecticut gang.).

The trial court admitted into evidence State's Exhibit 3, which is a receipt for an attempted credit card transaction at K-Mart on 13 October 2004 at 9:34 a.m. The trial court also admitted State's Exhibit 9, which is defendant's statement written by Detective Murphy. The statement says:

> [Lanier] and I went to High Point to Wal-Mart (sic). It is beside a nail shop. I went into Wal-Mart (sic) to get some underwear. Came out and met [Lanier] in the parking lot. [Lanier] told me to go inside and distract the lady in the nail shop. I was talking to the Oriental lady, and [Lanier] took the cash register. [Lanier] ran out of the store with the cash register. The woman and I was wrestling around on the ground. I scraped my knee. The woman threw her shoe at me. I ran outside and got in the Blazer (sic) with [Lanier] and we left. [Lanier] threw the register out of the window just down the road from the nail salon. [Lanier] pried open the cash register with a screwdriver, but there was no money inside.

The trial court admitted this statement and stated that it was "admissible solely for the limited purpose of showing that [defendant] had a common plan or scheme with [Lanier], whom she was with at that time. And that is the only way you may consider this evidence."

On the morning of 13 October 2004, defendant and Lanier: (1) entered K-Mart and attempted to use a stolen credit card; (2) committed common law robbery at the Salon; and, (3) robbed Bailey an employee at the Zingo Mart at knife-point. All three stores are located within three blocks of each other. All acts were committed within approximately one hour. The trial court properly admitted Exhibit 3 and 9 with a limiting instruction for the jury to consider this evidence as tending to show a common scheme or plan. This assignment of error is overruled.

## VII. State's Opening Statement

[5] Defendant argues the trial court erred when it failed to sustain her objection to the State's opening statement. We disagree.

Under N.C. Gen. Stat. § 15A-1221(a)(4), each party must be given the opportunity to make a brief opening statement, but the defendant may reserve his opening statement. *State v. Mash*, 328 N.C. 61, 64-65,

399 S.E.2d 307, 310 (1991). The trial court is given broad discretion to control the extent and manner of questioning prospective jurors, and its decisions will not be overturned absent an abuse of discretion. *Id.* An opening statement is for the purpose of making a general forecast of the evidence, not for arguing the case, instructing on the law, or contradicting the other party's witnesses. *Id.* "N.C. Gen. Stat. § 15A-1221(a)(4) permits each party in a criminal jury trial to make an opening statement but does not define the scope of that statement. However, wide latitude is generally allowed with respect to its scope. Control of the parties' opening statements is within the discretion of the trial court." *State v. Holmes,* 120 N.C. App. 54, 62, 460 S.E.2d 915, 920, *disc. rev. denied,* 342 N.C. 416, 465 S.E.2d 545 (1995) (quotations and citations omitted).

During his opening statement, the prosecutor stated: "the first thing you will hear is that there was a robbery that occurred at Perfect Nails on South Main Street. This is a nail salon down here on South Main." The trial court overruled defense counsel's objection. The prosecutor is allowed latitude regarding the scope of his opening statement and forecasted admissible and relevant evidence tending to show a common scheme or plan. The trial court did not abuse its discretion when it overruled defendant's objection. This assignment of error is overruled.

## VIII.  Conclusion

The trial court did not err when it denied defendant's motion to dismiss the charge of robbery with a dangerous weapon. Sufficient evidence tended to show defendant and Lanier acted in concert to commit the crimes. The trial court did not commit prejudicial error when it allowed the jury to review a redacted officer's report that admitted portions of defendant's statement to the officer that were testified to at trial.

The trial court did not err by failing to charge the jury on common law robbery as a lesser included offense of robbery. All evidence tended to show Lanier committed the robbery of Bailey at the Zingo Mart with a deadly weapon.

The trial court did not err when it allowed Exhibits 3 and 9 into evidence as relevant to show common plan or scheme. The trial court did not err when it overruled defendant's objection to the State's opening statement referring to the Perfect Nail Salon robbery. Defendant received a fair trial, free from prejudicial errors she preserved, assigned, and argued.

No Prejudicial Error.

Judge GEER concurs.

Judge ELMORE dissents by separate opinion.

ELMORE, Judge, dissenting.

I respectfully dissent from the majority opinion holding that the State produced sufficient evidence to survive defendant's motion to dismiss. Because I believe that the evidence was insufficient to convince a rational trier of fact that defendant was guilty of robbery with a dangerous weapon, I would hold that the trial court erred by not allowing defendant's motion to dismiss the charge of robbery with a dangerous weapon, and would order a new trial for defendant.

"The State concede[s] that defendant herself did not commit the robbery at the Zingo Mart," and instead argues that she acted in concert with Lanier. At issue is whether the State presented substantial evidence showing that defendant was acting in concert with Lanier to rob the Zingo Mart. I would hold that the State failed to carry this burden.

Under the doctrine of acting in concert,

[I]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.

*State v. Herring*, 176 N.C. App. 395, 399, 626 S.E.2d 742, 745 (2006) (quoting *State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997)) (alteration in original) (internal citations omitted).

The State must show that defendant was present, that she had joined in purpose with Lanier to commit a crime, and that the crime for which she was being tried, robbery with a dangerous weapon, was either "in pursuance of [that] common purpose . . . or [was] a natural or probable consequence thereof." *Id.*; *see also State v. Sloan*, 180 N.C. App. 527, 638 S.E.2d 36 (2006) (Elmore, J., concurring in part and dissenting in part). Defendant argues that the State did not present sufficient evidence to establish her presence. "For purposes of the doctrine, '[a] person is constructively present during the commission

of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime.' " *State v. Mann*, 355 N.C. 294, 306, 560 S.E.2d 776, 784 (2002) (quoting *State v. Willis*, 332 N.C. 151, 175, 420 S.E.2d 158, 169 (1992)).

I do not think that the State presented sufficient evidence to establish defendant's constructive presence. The majority holds that defendant was constructively present during the Zingo Mart crime "because she was actually present and participated in the crimes at K-Mart and the Perfect Nail Salon." In my opinion, such reasoning is inadequate to support a finding of constructive presence. Although by her own admission defendant was seated in the vehicle outside the Zingo Mart, it appears that she was sitting in the passenger seat, rather than positioned as a getaway driver. This inference is supported by both defendant's statement that "Hank pulled behind a store" and Detective Murphy's testimony that Lanier was driving the vehicle at the time defendant and Lanier were arrested. The store clerk testified that he did not see a vehicle at the time of the robbery, and defendant stated that they were parked behind the Zingo Mart. Again, both statements support the inference that defendant was not in a position to render assistance or encourage the actual perpetration of the crime. Although the use of circumstantial evidence is permissible to establish sufficient evidence, "that evidence must be real and substantial and not merely speculative. Substantial evidence is evidence from which a rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Berry*, 143 N.C. App. 187, 207, 546 S.E.2d 145, 159 (2001) (quotations and citations omitted). Here, the State's evidence does not rise to the level of sufficiency. Accordingly, I would find that the State did not present sufficient evidence to support defendant's constructive presence during the Zingo Mart robbery.[1]

Because I would find that it was error for the trial court to deny defendant's motion to dismiss, I respectfully dissent from the majority opinion.

---

1. Although I need not address whether defendant shared a common purpose with Lanier in order to find error with the trial court's ruling, defendant's admission to the events at K-Mart and the Perfect Nail Salon, as well as her voluntary plea of guilty to the common law robbery of the nail salon, indicate that the Zingo Mart robbery occurred outside the scope of any common purpose that defendant had with Lanier.