STATE OF NORTH CAROLINA v. DWIGHT BELL

No. 8714SC186

(Filed 1 December 1987)

**1. Assault and Battery § 14.4— assault with deadly weapon with intent to kill inflicting serious injury — sufficiency of evidence**

Evidence was sufficient to withstand defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury where the victim testified that defendant pulled out a gun and placed it to the victim's head, the gun discharged, and the victim was injured as a result.

**2. Criminal Law § 90.1— State's witness — impeachment by prior inconsistent statement — procedure**

Subsequent to the adoption of N. C. Rule of Evidence 607, the better practice continues to be for the trial court, before allowing impeachment of the State's own witness by a prior inconsistent statement, to make findings and conclusions with respect to whether the witness's testimony is other than what the State had reason to expect or whether a need to impeach otherwise exists. In this case, the trial court did not err in allowing the State to impeach its own witness without a preliminary inquiry by the court where the record indicated that the prosecutor was unaware of the witness's prior inconsistent statement until after she had testified on direct examination, and defendant offered substantially the same evidence through his own witness.

**3. Criminal Law § 117.1— impeachment — sufficiency of instructions**

Though the trial court should have given a more detailed instruction explaining how impeachment works to insure that the jury did not consider any hearsay evidence as substantive evidence of defendant's guilt, failure to do so was not so prejudicial as to rise to the level of "plain error."

**4. Assault and Battery § 16— assault with deadly weapon with intent to kill inflicting serious injury — failure to instruct on lesser offenses — error**

In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court erred in failing to include an instruction on either simple assault or assault inflicting serious injury where all witnesses agreed that defendant struck the victim with his hands; only the victim himself testified that defendant had a gun; and some evidence suggested that, if a gun was present, it may have been that of the victim himself.

State v. Bell

**5. Assault and Battery § 13— witness "still afraid" of defendant—improper character evidence**

The trial court in an assault prosecution erred in overruling defendant's objection to testimony that a witness was "still afraid" of defendant on the day she testified, since the only apparent relevance of the evidence was to imply that defendant was a violent person, and it was thus inadmissible character evidence.

**6. Assault and Battery § 15.3— gun as deadly weapon—instruction proper**

The trial court in an assault prosecution did not err in instructing the jury that a gun was a deadly weapon, and it was of no significance whether the gun was used to strike or to shoot the victim.

APPEAL by defendant from *Robert Hobgood, Judge*. Judgment entered 2 October 1986 in Superior Court, DURHAM County. Heard in the Court of Appeals 22 September 1987.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isham B. Hudson, Jr. for the State.*

*Loflin and Loflin, by Thomas F. Loflin, III for defendant-appellant.*

BECTON, Judge.

Defendant, Dwight Bell, was indicted for the offenses of assault with a deadly weapon with intent to kill inflicting serious injury and discharging a firearm into an occupied vehicle. At the conclusion of the State's evidence, the trial court granted defendant's motion to dismiss the second charge. From possible verdicts of assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon, or not guilty, the jury returned a verdict of assault with a deadly weapon inflicting serious injury. From a judgment imposing an active five year prison sentence, defendant appeals, assigning error to the trial court's (1) admission of testimony by the State's witness, Sharon Cameron, that she was "still afraid" of defendant, (2) admission of evidence offered by the State to impeach its own witness, Terry Smith, (3) failure to give adequate limiting instructions regarding various hearsay statements offered for impeachment or corroboration, (4) denial of defendant's motion to dismiss the assault charge, (5) failure to instruct the jury on simple assault, and (6) instruction to the jury that a .45 caliber pistol is a deadly weapon as a matter of

law. We find merit in his fifth assignment of error and accordingly award defendant a new trial.

I

*State's Evidence*

Defendant was arrested pursuant to a warrant that charged him with felonious assault with intent to kill "with a handgun cal. unknown a deadly weapon by striking the victim Dennis Allen in the head with said weapon, gun discharging resulting in an open wound above the right eye requiring six stitches."

At trial the alleged victim, Dennis Allen, testified in part as follows: Allen had known defendant all his life. Allen's girlfriend, Sharon Cameron, and defendant's wife were sisters. On 22 March 1986, at approximately 6:00 or 7:00 p.m., Allen, driving his mother's pick-up truck, visited the home of Sharon Cameron, where she resided with her grandmother, her young daughter, and two of her brothers. Allen's cousin, Terry Smith, arrived a few minutes later. While the two were conversing outside with Rodney Cameron, one of Sharon's brothers, defendant drove up in his red Javelin automobile, accompanied by defendant's cousin, Phil Harris. Allen talked to Harris a few minutes; then, defendant and Harris left.

Allen, Smith, and Rodney Cameron then drove to a nearby store for a six pack of beer, returned directly to the Cameron residence, and while remaining in the truck, began to talk and drink the beer. Allen occupied the driver's seat of the truck, Rodney Cameron sat in the middle, and Smith sat by the door. Allen was still on his first beer when defendant returned, accompanied by Phil Harris, Wayne Cameron (Sharon's oldest brother), and a third person that Allen did not recognize, although he heard the name "Rick" mentioned. Defendant backed into the driveway; Wayne Cameron got out and walked around to the back of the house; then defendant accelerated quickly to a position parallel to Allen's truck. Defendant's car faced the street, and the truck faced the house so that the two drivers' doors were facing and a few feet apart. Allen's window was open, and, because he is blind in his left eye, he turned so as to see defendant with his right eye.

Defendant alighted, approached Allen, and, without provocation, struck him several times, probably with an open hand. Allen started the truck but was prevented from leaving by defendant, who reached into the cab and attempted to pull Allen from the truck, telling him to stand up and fight like a man. Then defendant stepped back, pulled up his shirt, pulled out a .45 automatic pistol, and "ratched" it, causing a bullet to move from the clip into the chamber.

At that point, Smith had already jumped from the truck. Rodney Cameron was leaning over Allen saying, "Dwight, it's not necessary. Don't do it," but he left the truck when he saw the pistol. Defendant stepped back up to the truck and stuck the pistol through the window and up to Allen's head. As Allen turned his head away, the gun discharged, causing the bullet to strike Allen over his right eye and exit through the top of the truck cab. Defendant told Allen if he said anything else about Dwight Bell "that ain't all he was going to do," and left.

Allen bled profusely from the gash over his eye. Rodney Cameron brought him a towel to wipe the blood away. Then Sharon and one of her brothers called "Popeye" took Allen to the hospital where the wound was cleaned and closed with six or seven stitches. Allen suffered from headaches for a couple of weeks, his head was swollen, and the wound left a scar.

At trial, Allen admitted that, on the occasion in question, he had a 380 millimeter revolver in a paper sack in the truck's glove compartment but denied that anyone knew it was there or that he touched it during the incident. He identified a .45 caliber pistol as that used by defendant. Allen further testified that he never asked Smith or Rodney Cameron to leave the truck, that Rodney Cameron saw the entire incident up to the point that defendant put the gun through the window, and that Smith saw only the beginning.

The State also called three other witnesses who were present during the incident to testify. By their in-court testimony, these three witnesses—Terry Smith, Rodney Cameron, and Sharon Cameron—corroborated Allen and one another in some respects but contradicted Allen and each other in other respects. Equally important, the testimony of Terry Smith and Rodney Cameron was inconsistent with one or more prior out-of-court statements

they had made to three other people. The State called these three people — Jennifer Lee Cook, Sherrie Allen, and Nannie Smith — to testify about what they had been told, but their testimony merely highlighted all the prior inconsistencies. Furthermore, a portion of the testimony of Nannie Smith was inconsistent with a prior statement that she had given to Sharon Cameron. Having heard that, the State then recalled Sharon Cameron to testify about Ms. Smith's prior statement.

In addition to the foregoing, the State offered testimony of a firearms expert, and of the arresting officer, who identified the .45 caliber pistol as the one he took from defendant upon arrest. R. D. Buchanan, the investigating officer, testified regarding statements made to him by Allen and Sharon Cameron at the hospital following the incident. Allen told Officer Buchanan that defendant slapped him several times, then struck him across the forehead with a firearm, and the firearm discharged.

*Defendant's Evidence*

Defendant's first witness, Bernard Allen, the victim's brother, merely corroborated testimony by the State's witness, Jennie Cook, about an out-of-court statement by Terry Smith. Terry Smith then took the stand to deny having ever discussed the incident with Bernard Allen or Jennie Cook.

Defendant's chief witness, Isaac Cameron, testified in pertinent part as follows: Isaac went to the Cameron residence about 6:30 or 7:00 p.m. on the day of the incident. He walked to his mother's house nearby for a few minutes, and when he returned defendant's car was there. Isaac went inside and watched television with his brother Wayne and defendant for approximately 45 minutes. He then walked outside with defendant, saw Dennis Allen in his mother's truck, and noticed Phil Harris and another person in defendant's car.

When they reached the truck, Allen accused defendant of stealing his drugs and threatened him. Defendant walked up to the truck and smacked Allen, and, at Allen's command, Terry Smith and Rodney Cameron got out of the truck. Smith went behind the house and Rodney went inside. The witness continued: "[a]t that time Dennis leaned over the seat toward the passenger door and at that time he came back up. All I know I saw Dwight

there and he was scuffling with each other and the next thing I knowed I heard a gun shot." Then Allen got out of the truck holding his head, and defendant got in his car and left.

Defendant was dressed in shorts with a tee shirt tucked inside them, and a beige belt. He did not have a gun on his person nor did Isaac Cameron see a firearm of any kind that night.

During the episode, Isaac Cameron was standing near the back of the truck about three feet away from defendant and Allen, and had defendant in full view at all times. He never saw defendant pull out a weapon. The porch light was on, but he did not observe who had the gun because he could not see inside the truck.

Defendant also called three other witnesses. Wayne Cameron denied having been with defendant that day or having any personal knowledge of the incident, but corroborated that his brother, Isaac, had been present at the Cameron residence that evening. The testimony of Phil Harris and Ricky Reams, the two occupants of defendant's car, tended to establish that Isaac was standing where he claimed to have been at the time of the incident, and that defendant did not have a gun before or after the event.

*Rebuttal*

On rebuttal, Sharon Cameron denied that her brother, Isaac, was ever at her house that night.

## II

[1] We first consider whether the trial court erred by denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant argues that, although the State produced substantial evidence of simple assault and, arguably, of assault inflicting serious injury, the evidence that Dennis Allen suffered a bullet wound was insufficient to support the offense charged or the lesser included offense of assault with a deadly weapon inflicting serious injury. He specifically cites the existence of evidence tending to show that defendant was unarmed and the absence of any medical evidence that the victim's wound was caused by a gunshot.

In ruling upon a motion to dismiss in a criminal action, the trial court is required to consider the evidence in the light most favorable to the State, disregarding discrepancies and contradictions, and drawing all reasonable inferences in the State's favor. *See State v. Simpson*, 303 N.C. 439, 448, 279 S.E. 2d 542, 548 (1981); *State v. Witherspoon*, 293 N.C. 321, 326, 237 S.E. 2d 822, 826 (1977). The testimony by the victim, Dennis Allen, that defendant pulled out a gun and placed it to Allen's head, that the gun discharged, and that Allen was injured as a result constitutes substantial evidence from which a jury could find that there was an assault with a firearm, and is sufficient to withstand the motion to dismiss. This assignment of error is overruled.

## III

We next consider defendant's second and third assignments of error relating to the State's impeachment of its own witnesses and to the adequacy of the limiting instructions on evidence of out-of-court statements. Defendant specifically challenges the admission, over objection, of Jennifer Cook's testimony concerning prior statements of the witness Terry Smith which tended to impeach Smith's testimony that he never saw a gun. Citing *State v. Cope*, 309 N.C. 47, 305 S.E. 2d 676 (1983), defendant contends that the State should not have been allowed to impeach its own witness without laying a proper foundation showing genuine surprise in fact. In addition, defendant argues that, in view of the large number and prejudicial nature of the other out-of-court statements admitted for purposes of impeachment or corroboration, the trial judge erred by failing to instruct the jury in detail that such testimony is not substantive evidence of guilt.

## A

[2] Prior to the adoption of the N. C. Rules of Evidence, the State was prohibited from impeaching its own witness by prior inconsistent statements or evidence of the witness's bad character. *State v. Hosey*, 318 N.C. 330, 348 S.E. 2d 805 (1986). *See, e.g., Cope.* An exception to the rule applied whenever the prosecutor was misled as to the expected testimony on a material fact and "surprised" by the testimony given, questions which were to be determined by a *voir dire. See State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975).

The anti-impeachment rule and its exceptions (and apparently their technical requirements) were abolished with the adoption of N. C. Rule of Evidence 607, N.C. Gen. Stat. Sec. 8C-1 (1986), which allows a witness to be impeached by any party, including the party calling him. *Hosey* at 339-40, 348 S.E. 2d at 811. However, there exists a real danger that this rule, if not applied cautiously, especially when it is combined with our rule allowing use of prior consistent statements for corroboration, *see, e.g., State v. Ramey*, 318 N.C. 457, 468-69, 349 S.E. 2d 566, 573-74 (1986), would make fair game of almost any out-of-court statement ever made by any witness. The Commentary to Rule 607 thus cautions that "[t]he impeaching proof must be *relevant* within the meaning of Rule 401 and Rule 403 and *must in fact be impeaching.*" (Emphasis added.)

True impeachment is, of course, a demonstration that a witness is not credible, not a method of presenting substantive evidence. In our opinion, the better practice continues to be for the trial court, before allowing impeachment of the State's own witness by a prior inconsistent statement, to make findings and conclusions with respect to whether the witness's testimony is other than what the State had reason to expect or whether a need to impeach otherwise exists. *See Hosey* (encouraging findings before allowing cross-examination by leading questions of witness friendly to party cross-examining him). Otherwise, the rule too easily camouflages a ruse whereby a party may call an unfriendly witness *solely* to justify the subsequent call of a second witness to testify about a prior inconsistent statement. In our view, it is not the intent of Rule 607 to provide a subterfuge for getting otherwise impermissible hearsay before the jury in the guise of impeachment, and we expressly disapprove this tactic.

Nevertheless, because in this case the record indicates that the prosecutor was unaware of Terry Smith's prior inconsistent statement to Jennifer Cook until *after* Smith had testified, and because defendant offered substantially the same evidence through his own witness, Bernard Allen, we conclude the admission of Ms. Cook's testimony without a preliminary inquiry by the trial court was not prejudicial error.

B

In addition to the challenged testimony of Jennifer Cook, we find in the record at least seven other instances of hearsay statements which were offered, at least ostensibly, for corroboration and/or impeachment of various witnesses. Prior to admitting Ms. Cook's testimony, the court instructed the jury to consider the evidence "only to the extent that you find it impeaches the testimony of the witness, Terry Smith." Thereafter, in most of the other instances, the court interjected a similar instruction. The trial judge further instructed, in his final charge to the jury, that these earlier statements were not to be considered "as evidence of the truth of what was said at that earlier time," and that any consistency or conflict of such statements with the testimony of a witness at trial could be considered in deciding whether to believe the trial testimony.

Defendant did not object to any of the out-of-court statements other than those which were part of the testimony of Ms. Cook, and we do not here consider the propriety of their admission. Moreover, defendant failed to object to the jury charge as given or to request any additional instruction, and is thus barred by Rule 10(b)(2) of the Rules of Appellate Procedure from raising this issue on appeal in the absence of "plain error." *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

[3]  We agree that, on the facts of this case, a more detailed instruction explaining how impeachment works should have been given to insure that the jury did not consider any of the hearsay as substantive evidence of defendant's guilt. However, in our view, the failure to do so was not so prejudicial as to rise to the level of "plain error." This assignment of error is overruled.

IV

[4]  We next address defendant's contention that the trial court erred by failing to submit to the jury the lesser included offense of simple assault. Because defendant failed to object at trial to the instruction given, our review is limited to whether the omission constitutes "plain error."

The plain error rule "allows review of fundamental errors or defects in jury instructions affecting substantial rights, which were not brought to the attention of the trial court." *State v.*

*Rathbone*, 78 N.C. App. 58, 65, 336 S.E. 2d 702, 706 (1985), *disc. rev. denied*, 316 N.C. 200, 341 S.E. 2d 582 (1986); *see Odom*. In order to obtain relief under this doctrine, defendant must establish that the omission was error, and that, in light of the record as a whole, the error had a probable impact on the verdict. *E.g.*, *State v. Sams*, 317 N.C. 230, 241, 345 S.E. 2d 179, 186 (1986). In the present case, our review of the whole record reveals "plain error" entitling defendant to a new trial.

Simple assault and assault inflicting serious injury are lesser included offenses of assault with a deadly weapon inflicting serious injury. When there is some evidence supporting a lesser included offense, the trial court must instruct the jury regarding the lesser offense. *E.g.*, *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E. 2d 514, 518 (1986). Failure to do so constitutes reversible error which is not cured by a verdict of guilty of the greater offense. *Id.*

In this case, evidence exists from which the jury could have found defendant guilty of simple assault or assault inflicting serious injury. All eyewitnesses, even witnesses for the defense, agreed that defendant struck the victim with his hands. There is, however, conflicting evidence regarding whether, thereafter, defendant used a firearm to further assault the victim. Only the victim himself testified that defendant had a gun. Defendant's eyewitness to the assault, Isaac Cameron, stated that defendant never drew a gun and was, in fact, unarmed. This was corroborated, in part, by numerous other witnesses who stated they never saw a gun on defendant's person, in his vehicle, or anywhere else. In addition, some evidence suggested that if a gun was present, it may have been that of the victim himself. Moreover, the fact that the jury found that serious injury had been inflicted does not affect our analysis since serious injury may be inflicted without the use of a deadly weapon.

Based on the foregoing, the jury could have disbelieved that a weapon was involved at all, or could have believed that any shot fired was not the result of defendant's use of a weapon. There is simply no way to ascertain what verdict the jury might have reached had they been given an alternative which did not include the use of a deadly weapon. Consequently, we hold that failure to include an instruction on either simple assault or assault inflicting serious injury was error.

Further, this is not a case like *Odom* in which the State's evidence of guilt was clear and the defendant's evidence neither credible nor corroborated. Rather, the State's own witnesses contradicted one another on various points regarding the timing of events, the persons present, and what actually happened. In view of the number of witnesses, the multiple prior consistent and inconsistent out-of-court statements admitted, and the generally confusing and contradictory nature of much of the testimony at trial, we hold that the error prejudicially affected substantial rights of the defendant and probably impacted upon the verdict so as to constitute "plain error" and mandate a new trial.

## V

Having ordered a new trial, we now address briefly defendant's remaining two contentions since they may arise on retrial.

## A

[5] Defendant argues that the trial court erred by overruling his objection to testimony elicited by the prosecutor from Sharon Cameron that she was "still afraid" of defendant on the day she testified. Defendant contends that this testimony was inadmissible character evidence under N.C. Gen. Stat. Sec. 8C-1, Rule 404(a).

We agree that, on these facts, the only apparent relevance of this evidence was to imply that defendant was a violent person and, consequently, it should not have been admitted. However, on this record, this error, standing alone, was not prejudicial.

## B

[6] Defendant's remaining assignment alleges "plain error" in the trial court's instruction to the jury that "[a] 45 caliber pistol is a deadly weapon." Defendant argues that a gun is not a deadly weapon unless it is used in a way that is likely to cause serious injury, and that, because there was some evidence that a pistol was used to *strike* the victim, rather than to shoot him, the nature of the instrument as a deadly weapon was a question of fact for the jury. This argument is without merit.

The only evidence that the pistol was used to hit the victim consists of testimony by Officer Buchanan about the victim's out-of-court description of the incident. This hearsay is not competent

substantive evidence of what happened. Moreover, numerous cases of our appellate courts state, without qualification, that a gun or pistol is a deadly weapon *per se*. *E.g., State v. Bullard*, 312 N.C. 129, 160, 322 S.E. 2d 370, 388 (1984); *State v. Ross*, 31 N.C. App. 394, 395-96, 229 S.E. 2d 218, 219 (1976), *disc. rev. denied and appeal dismissed*, 291 N.C. 715, 232 S.E. 2d 206 (1977). Accordingly, we hold that the instruction was proper.

## VI

For "plain error" in the failure to submit to the jury the lesser included offense of simple assault or assault inflicting serious injury, we order a

New trial.

Judges JOHNSON and PARKER concur.