An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-238

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

STATE OF NORTH CAROLINA

  v.         Cumberland County
             No.  12CRS058034

JERMAINE MCNEILL,
  Defendant.


Appeal by defendant from judgment entered on or about 19 September 2013 by Judge Mary Ann Tally in Cumberland County Superior Court.  Heard in the Court of Appeals 11 August 2014.

> *Attorney General Roy A. Cooper III, by Assistant Attorney General Robert K. Smith, for the State.*
>
> *Gilda C. Rodriguez for defendant-appellant.*


STROUD, Judge.


Upon the jury's verdict finding defendant guilty of robbery with a dangerous weapon, the trial court sentenced him to an active prison term of 60 to 84 months.  Defendant now appeals from the judgment.

I. The State's Evidence

On the night of 22 June 2012, Lokie Stephenson entered a Wilco Hess gas station on Raeford Road, approached the sales counter, and purchased a cigar from the employee on duty, Sylvia Smith. When Smith opened the cash drawer, Stephenson brandished a small metallic handgun, removed approximately $150.00 from the drawer, and exited the store through the left-hand door, which "headed toward Skibo." Smith immediately called 911.

Eric Perez, Jr., was pumping gas at the Wilco Hess station at the time of the robbery. Looking into the store, he saw that the clerk had her hands in the air and saw a man in a white shirt and blue jeans behind the store's counter. When the man exited the store, Perez "walked in and asked [the clerk] if she was all right." Smith told Perez she had been robbed. As Perez returned to his car, he observed a silver Lincoln "pulling out of the parking lot" from "the next set of driveways" adjacent to the Wilco Hess. The Lincoln "pulled off pretty fast" onto Raeford Road heading "towards Skibo[.]"

Fayetteville Police Officer Vernon Thomas Parker was on patrol in the area of Skibo and Raeford Roads when he received a "be on the lookout" ("BOLO") call for a vehicle allegedly involved in a robbery of the Wilco Hess gas station at Raeford Road and Roxie Avenue. Within two to five minutes, he spotted a

silver or gray Lincoln matching the BOLO description "driving at a high rate of speed" on Raeford. After observing the Lincoln turn right onto "Skibo Road from Raeford Road at a high rate of speed" and in a "careless and reckless" manner, Officer Parker pulled his patrol car behind the vehicle. Visible inside the Lincoln were a driver, later identified as defendant, and a single passenger, later identified as Stephenson. "The passenger was looking back" as though "to see who was behind him." As they approached a railroad crossing, Officer Parker saw the driver look back toward him in his mirror. The Lincoln then "cut across" four lanes of traffic and pulled into a Kangaroo gas station at the corner of Skibo and Cliffdale, stopping beside a fuel pump. Officer Parker parked his patrol car two or three lengths away from the fuel pump. He observed a "conversation" between the passenger and driver and saw the passenger "continuously reaching up under his seat[.]"

Officer Parker called for backup and was soon joined at the scene by Officer Kenneth Tims. As the two officers approached the Lincoln, Stephenson exited the passenger's side door and began to walk away. Officer Parker detained Stephenson while Officer Tims approached the driver's side door and twice ordered defendant to show his hands. Defendant "stuck his left hand out

the driver's window" but "continued to fumble with his right hand" in the vicinity of "the center console of the vehicle." Only after Officer Tims ordered the driver to show his hands for a third time did defendant "finally st[i]ck his . . . right hand out the window." Officer Tims removed defendant from the vehicle and placed him in the back of a patrol car. Officer Tims then searched the Lincoln's interior as follows:

> I observed inside the suspect vehicle there was cash laying near the end of the passenger seat. Small denominations of bills—1's and 5's—near the buckle where the seat belt fastens. The center console, there was also cash sticking out of the closed center console, the armrest portion of it, and I could see cash sticking out.

Officer Tims also found a wadded-up $5 bill in the vehicle's ashtray and a "small silver handgun under the passenger seat."

A total of $144 in cash – "three $20 bills, one $10 bill, seven $5 bills, [and] 39 $1 bills" – was collected from the vehicle. The gun and currency were admitted into evidence at trial. Photographs of the vehicle's center console with cash "kind of sticking out" were also published to the jury.

Approximately 20 minutes after the robbery, Officer Josue Rivera brought Smith to the Kangaroo station to view the two suspects. Smith identified Stephenson as the person who robbed

her, noting that he "was still wearing everything that he was wearing at the time [of] the robbery[.]" However, she testified that she did not see a getaway car or driver and could not identify them.

At trial, Perez identified photographs of the Lincoln stopped by Officer Parker as the "vehicle that pulled out of the parking lot a little further up from the gas station." The car was registered to Stephenson's girlfriend, Jewel McFall.

## II. Jury Instructions

On appeal, defendant first challenges the trial court's decision to instruct the jury on the doctrines of concerted action and aiding and abetting. He argues that the State's evidence did not show that he was actually or constructively present at the robbery or that he shared a common plan or purpose with Stephenson, as required to establish their acting in concert. Likewise, defendant contends the evidence did not show he knowingly aided Stephenson's robbery of the Wilco Hess simply because he was driving the vehicle in which Stephenson was later found.

"It is generally error, prejudicial to defendant, for the trial court to instruct the jury upon a theory of a defendant's guilt which is not supported by the evidence." *State v. Brown*,

80 N.C. App. 307, 311, 342 S.E.2d 42, 44 (1986).  Accordingly, a jury instruction on a theory of criminal liability must be "based upon a state of facts presented by some reasonable view of the evidence."  *State v. Sweat*, 366 N.C. 79, 89, 727 S.E.2d 691, 698 (2012) (citation and quotation marks omitted).  Whether a particular jury instruction is supported by the evidence is a question of law subject to *de novo* review.  *State v. Gabriel*, 207 N.C. App. 440, 443, 700 S.E.2d 127, 129 (2010), *disc. review denied*, 365 N.C. 211, 710 S.E.2d 19 (2011).

"In order to support a jury instruction on acting in concert, the evidence must be sufficient to show that the defendant was present at the scene of the crime and that the defendant was acting together with another who did the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."  *Id.* at 443-44, 700 S.E.2d at 129. The defendant's presence at the scene may be actual or constructive.  This Court has held that the driver of a getaway car in an armed robbery "may be constructively present at the scene of a crime although stationed a convenient distance away." *State v. Combs*, 182 N.C. App. 365, 370, 642 S.E.2d 491, 496, *aff'd per curiam*, 361 N.C. 585, 650 S.E.2d 594 (2007).  As for the requirement of a "common plan or purpose[,]" *Gabriel*, 207

N.C. App. at 443-44, 700 S.E.2d at 129, we have explained that "acting in concert does not require an express agreement between the parties. All that is necessary is an implied mutual understanding or agreement to do the crimes." *State v. Hill*, 182 N.C. App. 88, 93, 641 S.E.2d 380, 385 (2007) (citation and quotation marks omitted).

"An instruction on aiding and abetting is supported . . . if there is evidence: '(1) that the crime was committed by another; (2) that the defendant knowingly . . . aided the other person; and (3) that the defendant's actions . . . contributed to the commission of the crime by the other person.'" *State v. Baskin*, 190 N.C. App. 102, 111, 660 S.E.2d 566, 573 (quoting *State v. Bond*, 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996)). Aiding and abetting may be established by proof that a person

> accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, *or to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense*.

*State v. Pryor*, 59 N.C. App. 1, 7, 295 S.E.2d 610, 615 (1982) (emphasis added) (citation and quotation marks omitted). Like

acting in concert, "aiding and abetting [does not] require a defendant to expressly vocalize h[is] assent to the criminal conduct." *State v. Marion*, ___ N.C. App. ___, ___, 756 S.E.2d 61, 68 (2014). "Communication of intent to [aid] the perpetrator may be inferred from the defendant's actions and from his relation to the perpetrator." *State v. Allen*, 127 N.C. App. 182, 185, 488 S.E.2d 294, 296 (1997).

Our Supreme Court has characterized the distinction between concerted action and aiding and abetting as "of little significance." *State v. Davis*, 301 N.C. 394, 398, 271 S.E.2d 263, 265 (1980). Based on the standards set forth above, we conclude the trial court properly instructed the jury on both acting in concert and aiding and abetting. *See id.*

The evidence showed that defendant transported Stephenson from the scene of an armed robbery in a vehicle located in the parking lot directly adjacent to the robbery site. Defendant "pulled off pretty fast" and then proceeded "at a high rate of speed, careless and reckless" down Raeford and onto Skibo Road. At the sight of Officer Parker's patrol car, defendant took apparently evasive action by cutting across four lanes of traffic. Despite repeated orders from police to display his hands, defendant "continued to fumble with his right hand" in

the vicinity of the vehicle's center console. Officers subsequently observed the spoils of the robbery visibly protruding from the center console. Finally, as noted by the trial court, the fact that defendant was driving a vehicle belonging to Stephenson's girlfriend tends to show that Stephenson also arrived at the scene in the vehicle, rather than randomly encountering defendant thereafter and "jump[ing] in the car." A reasonable view of this evidence would allow a determination that defendant was constructively present at the robbery perpetrated by Stephenson in order to assist Stephenson by driving the getaway car. *See id.* ("[T]he evidence in this case warranted jury instructions on both principles[.]"); *see also Baskin*, 190 N.C. App. at 111, 660 S.E.2d at 574 (aiding and abetting); *Combs*, 182 N.C. App. at 370, 642 S.E.2d at 496 (acting in concert). Defendant's argument is overruled.

### III. Sufficiency of the Evidence

Defendant next claims the trial court erred in denying his motion to dismiss the charge of robbery with a dangerous weapon at the conclusion of the evidence.[1] While conceding that Stephenson committed an armed robbery at the Wilco Hess,

---

[1] The court dismissed charges of operating a vehicle without a license and conspiracy to commit robbery with a dangerous weapon.

defendant contends there was no evidence that he was constructively present at the robbery or that he shared a common plan or purpose with Stephenson, as required to establish guilt by acting in concert. Similarly, defendant insists the State failed to prove that he knowingly aided Stephenson or contributed to his commission of the robbery.

"Upon review of a motion to dismiss, the court determines whether there is substantial evidence, viewed in the light most favorable to the State, of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Lane*, 163 N.C. App. 495, 499, 594 S.E.2d 107, 110 (2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "[T]he State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal[.]" *State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 843 (2011) (citation and quotation marks omitted).

Robbery with a dangerous weapon consists of "(1) an unlawful taking or an attempt to take personal property from the

person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998); *see* N.C. Gen. Stat. § 14-87 (2013).

As discussed in the previous section, we find substantial evidence that defendant joined with Stephenson in committing the robbery and was thus liable for acting in concert with Stephenson or as his aider and abettor. By driving the getaway car stationed in a parking lot immediately adjacent to the robbery, defendant evinced both his constructive presence at the crime scene and his shared plan or purpose with Stephenson to commit the offense. *See Davis*, 301 N.C. at 398, 271 S.E.2d at 265. Defendant's speedy and reckless manner of flight was further evidence of his intent to assist Stephenson. *See Baskin*, 190 N.C. App. at 111, 660 S.E.2d at 574. Finally, defendant's suspicious movements near the vehicle's center console, where cash consistent with the amount stolen during the robbery was found, provided additional circumstantial evidence of defendant's knowledge and intent. *See Davis*, 301 N.C. at 398, 271 S.E.2d at 265. "This evidence—and the reasonable inferences that may be drawn from it—is relevant evidence that a

reasonable juror could conclude was adequate to support the conclusion that Defendant remained in the vicinity of the crime scene, was willing to render assistance, and did, in fact, aid in the perpetration of the offense[.]" *Marion*, ___ N.C. App. at ___, 756 S.E.2d at 69. Accordingly, the trial court properly denied defendant's motion to dismiss.

## IV. Conclusion

We hold that defendant received a fair trial free from prejudicial error.

NO ERROR.

Judges BRYANT and HUNTER, JR., Robert N. concur.

Report per Rule 30(e).