ARROWOOD, Judge.
James Andrew Kelly, III ("defendant") appeals from judgment entered on his conviction of robbery with a dangerous weapon. For the reasons stated herein, we find no error.
I. Background
On 7 January 2013, a Pasquotank County Grand Jury indicted defendant for robbery with a dangerous weapon and possession of cocaine. The State voluntarily dismissed the possession of cocaine charge prior to trial.
The matter came on for hearing on 5 September 2017 in Pasquotank County Superior Court, the Honorable J. Carlton Cole presiding. Defendant was tried jointly with Samuel Eugene Geddie ("Geddie"). The State's evidence tended to show as follows.
Around 2 a.m. on 30 November 2012, Kayla Turner ("Turner") drove defendant and Geddie to a gas station to buy cigarettes. Geddie sat in the front passenger seat, and defendant sat in the back seat, behind Turner. As the car approached the gas station, Geddie instructed Turner to turn into a Hampton Inn parking lot. As they drove through the parking lot, defendant pointed out a woman in her car, counting money.
Upon seeing the woman, Geddie directed Turner to turn into the back of a Golden Corral parking lot, which was just over 50 yards from the Hampton Inn parking lot. Once parked at the Golden Corral, Geddie and defendant went to the trunk of the car, and then "took off" towards the hotel. Turner remained in the car, with the understanding that Geddie and defendant had left to rob the woman in the Hampton Inn parking lot.
Around the same time, Dr. Gina Francis ("Dr. Francis") walked from her car, across the Hampton Inn parking lot, towards the Hampton Inn. As she walked, she heard someone quickly approach her from behind. Dr. Francis turned, and saw a masked assailant, holding a shotgun, with the barrel up. She swung at him with her purse, eventually dropping it. The assailant "cowered over [Dr. Francis] with the butt of the gun as though he was going to hit [her] in the head with it." Then the assailant tapped her head with the gun, as if telling her to get down. At that time, she heard another person in the parking lot say "something to the effect of, come on man, let's go." The assailant took Dr. Francis' purse, and both the assailant and the other, second assailant, ran towards the Golden Corral.
At approximately 2:30 a.m., Police Officer David Sutton ("Officer Sutton") noticed Turner's parked car running in the Golden Corral's parking lot. He also saw a person running through the parking lot to the area past the car, holding a black bag and a black blunt object. The person he had seen running walked towards him, no longer holding the bag or blunt object. Officer Sutton recognized the individual as Geddie, who he knew from prior encounters. Geddie told Officer Sutton that he and Turner had argued, and Turner had attempted to run him over with her car. Observing Turner in the driver's seat of the car, and defendant seated behind her, Officer Sutton radioed for assistance with the alleged domestic disturbance.
Shortly after assistance arrived, Central Communications notified Officer Sutton of an armed robbery at the Hampton Inn, which was only "a little over a half a football field" from Turner's parked car. Given the close proximity and time of night, the officers detained defendant, Geddie, and Turner as suspects. The officers retrieved an air soft gun from the car that was in plain view from under the driver's seat, in front of where defendant had sat, and a 20-gauge shotgun shell from defendant's right coat pocket. Officer Sutton also investigated the area where Geddie ran before approaching Officer Sutton, finding a loaded 20-gauge sawn off shotgun, and Dr. Francis' purse. Based on this evidence, the officers arrested defendant, Geddie, and Turner for the robbery of Dr. Francis.
At the close of the State's evidence, defendant moved to dismiss the charge against him for insufficient evidence. The trial court denied the motion. Neither defendant nor Geddie presented evidence at trial. Defendant renewed his motion to dismiss, which the trial court denied.
The jury found defendant guilty of robbery with a dangerous weapon, and found Geddie guilty of robbery with a dangerous weapon, possession of a weapon of mass destruction, and possession of a firearm by a felon. The trial court sentenced defendant to 100 to 132 months imprisonment, and continued Geddie's sentencing.
Defendant appeals.
II. Discussion
On appeal, defendant argues that: (1) the trial court erred by denying his motion to dismiss; (2) the trial court erred in allowing, over his objection, the State's motion to join defendant and Geddie's trials; and (3) the trial court plainly erred by failing to sufficiently differentiate the case against defendant from the case against Geddie when it instructed the jury. We address each argument in turn.
A. Motion to Dismiss
Defendant argues the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon. Specifically, defendant argues the State did not put forth sufficient evidence because there was no evidence that defendant was present at the robbery. Instead, defendant argues that Geddie was a "lone assailant." We disagree.
We review "the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). When ruling on a defendant's motion to dismiss the court considers "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192-93, 451 S.E.2d 211, 223 (1994) (citation omitted).
To convict a defendant of robbery with a dangerous weapon, in violation of N.C. Gen. Stat. § 14-87(a) (2017), the State must prove the following elements: "(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim." State v. Hall , 194 N.C. App. 42, 52, 669 S.E.2d 30, 37 (2008) (citation omitted). Here, the jury was instructed on a theory of acting in concert. Under the theory of acting in concert, "if two or more persons join in a purpose to commit a crime, each person is responsible for all unlawful acts committed by the other persons as long as those acts are committed in furtherance of the crime's common purpose." State v. Hill , 182 N.C. App. 88, 92-93, 641 S.E.2d 380, 385 (2007) (citation omitted).
The evidence presented at trial tended to show that Geddie and defendant left Turner's car together, leaving Turner with the understanding they planned to rob a woman in the Hampton Inn parking lot. Dr. Francis was then robbed in the parking lot, with one assailant directly upon her, and another a distance away in the parking lot. The district attorney demonstrated the approximate distance within the confines of the courtroom. The assailants fled the scene together.
Subsequently, Officer Sutton observed Geddie running from the direction of the Hampton Inn parking lot, past Turner's car in the Golden Corral parking lot. Geddie appeared to have two items in his hands, but when he approached Officer Sutton from the area behind the car, the items were gone. Dr. Francis' purse and a shotgun were later found in the area past Turner's car. The officers found a shell for the shotgun in defendant's pocket, and an air soft gun under the driver's seat in Turner's car, which was the seat in front of where defendant sat when Officer Sutton first approached the car.
Viewing this evidence in the light most favorable to the State, there was sufficient evidence to meet the elements of robbery with a dangerous weapon, where the evidence showed defendant and Geddie used a shotgun to threaten Dr. Francis and to steal her purse. Regardless of whether defendant was the assailant that approached Dr. Francis with the gun or the second assailant, substantial evidence showed that the second assailant was joined with the first to effectuate the robbery, and was close enough to render assistance and encourage the crime where he was within the bounds of the parking lot, and encouraged the first assailant to flee with him. See State v. Combs , 182 N.C. App. 365, 370, 642 S.E.2d 491, 496, aff'd , 361 N.C. 585, 650 S.E.2d 594 (2007) (explaining that constructive presence for the purposes of finding defendant guilty of a crime under a theory of acting in concert "is not determined by the defendant's actual distance from the crime; the accused simply must be near enough to render assistance if need be and to encourage the actual perpetration of the crime") (citation omitted). Therefore, the trial court did not err when it denied defendant's motion to dismiss the charge of robbery with a dangerous weapon for insufficiency of the evidence.
B. Motion to Join Defendants
Defendant argues that the trial court erred in allowing, over his objection, the State's motion to join defendant and Geddie's trials. We disagree.
On a prosecutor's written motion, charges against two or more defendants may be joined for trial "[w]hen each of the defendants is charged with accountability for each offense" or when the several offenses charged: (1) are part of a common scheme or plan, (2) are part of the same act or transaction, or (3) are "so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." N.C. Gen. Stat. § 15A-926(b)(2) (2017).
Whether to allow a motion to join defendants for trial as authorized by statute ordinarily is addressed to the sound discretion of the trial judge. Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial judge's discretionary ruling on the question will not be disturbed.
State v. Paige, 316 N.C. 630, 641, 343 S.E.2d 848, 855 (1986) (citations and internal quotation marks omitted).
At the outset, we note that defendant avers the trial court should have revisited the issue of joinder sua sponte when exhibits 15 and 16 were admitted into evidence. Exhibits 15 and 16 are two written accounts of 30 November 2012 that Turner submitted to law enforcement prior to trial. At trial, she testified that these accounts were false and written by Geddie. She testified that she only typed, signed, and submitted the accounts at defendant's request.
We disagree with defendant's assertion that the trial court had the duty to reconsider the joinder on its own initiative when these documents were submitted, as a defendant waives his right to severance "[i]f a severance motion is not made or is not renewed at the appropriate time[.]" State v. Silva , 304 N.C. 122, 128, 282 S.E.2d 449, 453 (1981) (citing N.C. Gen. Stat. § 15A-927(a)(2) ). Here, defendant did not make a timely motion to sever, and, thereby, waived his argument that he had the right to severance under these facts. Thus, we need not consider whether, under the facts of this case, defendant became entitled to severance after the joinder took place, and we are "limited to reviewing whether the trial court abused its discretion in ordering joinder at the time of the trial court's decision to join." State v. Wood , 185 N.C. App. 227, 230, 647 S.E.2d 679, 683, disc. review denied , 361 N.C. 703, 655 S.E.2d 402 (2007) (citation and internal quotation marks omitted).
Defendant argues that the trial court abused its discretion in joining the defendants' trials in three ways: (1) the joinder deprived him of a fair trial because the trial court allowed exhibits 15 and 16 into evidence, which would not have been admitted in a trial solely against defendant; (2) the joinder deprived him of a fair trial because most of the evidence at trial was about Geddie; and (3) the joinder deprived him of a fair trial because exhibits 15 and 16 were statements of a non-testifying codefendant, and, therefore, their admission violated defendant's Sixth Amendment right to confront the witness against him. [Def. Br. at 19] We disagree.
In State v. Workman , 344 N.C. 482, 476 S.E.2d 301 (1996), the defendant argued the joinder of his trial with another defendant's trial deprived him of a fair trial because it "resulted in the admission of prejudicial rebuttal evidence that could not have been offered had he been tried separately." Id. at 496, 476 S.E.2d at 308. Our Supreme Court did not address whether the evidence at issue was prejudicial because it held that the defendant failed to preserve the issue when he "did not voice an objection, on any grounds, to the elicited testimony he now contends was improper and prejudicial" in violation of Rule 10 of the North Carolina Rules of Appellate Procedure. Id. ; see N.C.R. App. P. 10(a)(1) (2018) (providing that a party must make a timely objection to preserve a question for appellate review).
Here, as in Workman , defendant did not object to the admission of exhibits 15 and 16 at trial, and never raised them as a bar to joinder. He also never argued the admission of the exhibits violated defendant's Sixth Amendment right to confront the witness against him. "Even alleged errors arising under the Constitution of the United States are waived if defendant does not raise them in the trial court." Id. at 496, 476 S.E.2d at 308-09 (quoting State v. Jaynes, 342 N.C. 249, 263, 464 S.E.2d 448, 457 (1995), cert. denied, 518 U.S. 1024, 135 L.Ed. 2d 1080 (1996) ). Thus, defendant waived appellate review of this issue.
Defendant's argument that the joinder deprived him of a fair trial because most of the evidence at trial was about Geddie is also waived. Defendant failed to support this argument with any reasoning or legal authority in violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure. Therefore, the argument is abandoned and need not be addressed by this Court. N.C.R. App. Pro. 28(b)(6) (2018); see State v. Sullivan , 201 N.C. App. 540, 547, 687 S.E.2d 504, 509 (2009).
Furthermore, to the extent defendant argues he was prejudiced by Geddie offering an antagonistic defense, this argument is misplaced because neither defendant nor Geddie presented evidence, and nothing in the record suggests a course of action was forced on either defendant as a result of a position or strategy taken by the other defendant. See State v. Lundy , 135 N.C. App. 13, 17, 519 S.E.2d 73, 78 (1999). Therefore, the trial court did not abuse its discretion when it granted the State's motion to join defendants for trial.
C. Jury Instructions
In his final argument, defendant contends the trial court plainly erred by failing to sufficiently differentiate the case against defendant from the case against Geddie when it instructed the jury.
Defendant did not object to the jury instructions at trial. Therefore, we review the instructions for plain error. State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). Under plain error review, an issue that was not preserved "may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) (2018). To show plain error, a "defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted). Accordingly, the error must have been "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and internal quotation marks omitted).
If a trial judge chooses to explain the law as to co-defendants simultaneously, "the trial judge must either give a separate final mandate as to each defendant or otherwise clearly instruct the jury that the guilt or innocence of one defendant is not dependent upon the guilt or innocence of a codefendant." State v. Lockamy, 31 N.C. App. 713, 716, 230 S.E.2d 565, 568 (1976). Our Court has repeatedly "found reversible error where two or more defendants are tried together for the same offense upon jury instructions susceptible to the construction that the jury should convict all of the defendants if they find beyond a reasonable doubt that any of the defendants committed the offense charged." State v. McCollum , 321 N.C. 557, 559-60, 364 S.E.2d 112, 113 (1988) (citation omitted).
In this case, construing the trial court's jury instructions contextually, as we must, see State v. Boykin , 310 N.C. 118, 125, 310 S.E.2d 315, 319 (1984), we hold that the instructions were not erroneous. Before instructing on the elements of each charge, the trial judge cautioned the jury: "Unless I tell you otherwise, you shall-you shall consider each instruction I give you separately and individually as it relates to each defendant ." (Emphasis added). The trial judge then gave the jury instruction on the robbery with a firearm charge, the only charge the jury could consider in relation to defendant as follows:
The defendant has been charged with robbery with a firearm, which is taking and carrying away the personal property of another from his person or his presence without his consent by endangering or threatening a person's life with a firearm, the taker knowing that he was not entitled to take the property and intending to deprive another of its use permanently.
For you to find these defendants guilty of this offense, the State must prove seven things beyond a reasonable doubt.
First, that these defendants took property from the person of another or in his presence.
That these defendants carried away the property.
Third, that the person did not voluntarily consent to the taking and carrying away of the property.
Fourth, that these defendants knew they were not entitled to take the property.
Fifth, that at the time of the taking these defendants intended to deprive that person of its use permanently.
Sixth, that these defendants had a firearm in their possession at the time they obtained the property.
And seventh, that these defendants obtained the property by endangering or threatening the life of that person with the firearm.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date these defendants had in their possession a firearm and took and carried away the property from the person or presence of the person without voluntary consent by endangering or threatening her life with the use or threatened use of a firearm, these defendants knowing that they were not entitled to take the property, and intending to deprive that person of its use permanently, it will be your duty to return a verdict of guilty.
If you do not so find or have a reasonable doubt as to one or more of these things, it will be your duty to return a verdict of not guilty.
Remember to consider each instruction I have read to you in relationship to each of the defendants both separately and individually. And you will consider the guilt or innocence of these defendants separately.
For a defendant to be guilty of a crime, it is not necessary that the defendant do all of the acts necessary to constitute the crime. If two or more persons join for a common purpose to commit robbery with a firearm, each of them if actually or constructively present is guilty of the crime.
(Emphasis added). It is clear from these instructions that the jury was to consider the guilt or innocence of the defendants separately when considering the robbery with a dangerous weapon charge. Indeed, the trial court emphasized the jury's duty to consider the charge as to each defendant separately both before and after instructing on the charge. Therefore, the trial court did not err. Because the trial court did not err, defendant cannot show plain error.
III. Conclusion
For the forgoing reasons, we hold the trial court did not commit error.
NO ERROR.
Report per Rule 30(e).
Judges BRYANT and HUNTER, JR. concur.